714 A.2d 918

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. HORACE
BRANCH, A/K/A BENJAMIN BRANCH, A/K/A HORACE S.
BRANCH, A/K/A TONY BROWN, A/K/A TONY HUFF, A/K/A
PHIL BLEVINS, DEFENDANT–APPELLANT.

Argued March 3, 1998—Decided July 28, 1998.

*Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney).

*Raymond W. Hoffman,* Assistant Prosecutor, argued the cause for respondent (*Patricia A. Hurt,* Essex County Prosecutor, attorney).

*Kevin H. Marino* argued the cause for *amicus curiae* The Association of Criminal Defense Lawyers of New Jersey (*Mr. Marino,* attorney; *Mr. Marino, Richard E. Shapiro* and *Roseann Bassler,* on the brief).

*Marcy H. Geraci,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Peter Verniero,* Attorney General, attorney).

*Horace Branch* submitted a supplemental letter brief, *pro se.*

O'HERN, J.

We granted certification primarily to consider whether a defendant may be convicted of felony murder on the basis of an uncharged predicate felony. A jury convicted defendant, Horace Branch, of the felony murder of a man caught in the cross-fire of a drug-related shootout. Defendant was charged with three separate acts of robbery that could have served as predicates to the felony-murder conviction under *N.J.S.A.* 2C:11–3. He was acquitted of each of these robbery charges. The Appellate Division concluded that the jury could have found that defendant was guilty of robbing a fourth victim, who was present at the time of the shooting but was not listed in the indictment as the victim of a robbery. On that basis, the Appellate Division upheld the felony-murder conviction. 301 *N.J.Super.* 307, 332–33, 693 *A.*2d 1272 (1997).

We disagree that a defendant may be convicted of felony murder without fair notice, at the time of trial, of the predicate felony used to satisfy the requirements of the felony-murder statute. We find no other basis to sustain that conviction. Accordingly, we reinstate the judgment of the trial court, which set aside the felony-murder conviction. We leave undisturbed defendant's convictions for aggravated manslaughter and various weapons offenses and the sentences imposed thereon by the trial court.

I

In the early morning hours of November 4, 1993, Randolph Mosley was shot and killed in the foyer of a building at 260 Prince Street in Newark. The shooting was drug-related. The police investigation led to Patricia Lee (referred to as Pettie), Philip Murphy, and Ken Dortch, all individuals involved in the drug trade. They provided information concerning the shooting and implicated defendant.

At trial, all three testified to the events surrounding Mosley's death. According to Murphy, defendant and Dortch approached Murphy and asked to buy cocaine. Murphy was acting as lookout for a dealer who sold drugs out of 260 Prince Street and testified that he went inside to retrieve the drugs. Upon his return, defendant forced Murphy and Dortch into the building at gunpoint. As the three entered the foyer, defendant said "[t]his is a stickup," and ordered Murphy, Dortch, and some other individuals, one of whom was Pettie Lee, up against the wall. Murphy testified that he volunteered to get additional drugs from a hiding place upstairs. While upstairs, Murphy heard gunshots. Upon returning to the foyer, he saw Randolph Mosley laying on the floor in a pool of blood. Murphy was aware that Pettie was armed and testified that he heard Pettie wonder aloud if it was a bullet from her gun that killed Mosley.

Dortch testified that he was helping to sell drugs on the street the day the shooting occurred. Dortch stated that defendant approached him inquiring about a possible sale of cocaine. Dortch escorted defendant to the entrance of 260 Prince Street. Dortch and defendant met with Murphy who entered the building to get the drugs. While Murphy was inside, defendant robbed Dortch of $50 at gunpoint. After Murphy returned with the drugs, Dortch said that defendant forced them into the hallway of the building. He witnessed defendant rob Pettie. Pettie responded by firing her gun at defendant. Dortch said that he and some other individuals in the hallway ran upstairs and waited for the shooting to stop. When Dortch and the others returned downstairs, they found Mosley lying on the floor bleeding. Dortch and the other individuals chased defendant down the street until defendant stopped and pointed a gun at them.

The State offered Pettie immunity in exchange for her testimony at trial. She testified, as did Murphy and Dortch, that while waiting for a drug "pick-up," defendant robbed her at gunpoint. Pettie shot at defendant as he was leaving. Defendant fired two

gunshots back at Pettie. Pettie stated that she believed initially that she was the one who shot Mosley.

Defendant testified that he had been sold inferior drugs and had simply returned to get his money back. He said that Pettie pulled a gun on him and that in the ensuing struggle her gun went off accidentally.

The State charged Branch with thirteen counts of crime, including armed robbery of Mosley, felony murder of Mosley, intentional murder of Mosley, armed robbery of Murphy, armed robbery of Dortch, and various weapons and hindering offenses. The felony-murder count specifically charged defendant with felony murder of Mosley in the course of robbing Mosley. The same indictment charged Pettie with two offenses, unauthorized possession of a handgun and possession of a handgun for an unlawful purpose of using it against another.

In its initial charge to the jury, the trial court instructed the jury on the felony-murder offense, but restricted the predicate felony to the robbery of Mosley:

> Now the second count of the Indictment alleges that at the same time and place Mr. Branch, while in the course of committing a robbery upon the person of [Randolph] Mos[ley] or in an attempt thereat or during flight therefrom, did kill and murder the said [Randolph] Mos[ley] contrary to law.

The court went on to define, in general terms, the elements of the offense of felony murder.

> So, the first element requires the State to prove beyond a reasonable doubt that the defendant was engaged in the commission of or an attempt to commit the robbery. The second and third elements require the State to establish that the victim's death was caused by the defendant and was caused during the commission of or the attempt to commit the robbery or flight from committing or attempting to commit that particular crime.

Following its receipt of general instructions and during its deliberations, the jury posed several written questions to the court. (Jury deliberations commenced on Thursday, November 10, 1994.) On the first day of deliberations, the jury asked if Pettie was charged with any criminal offense as a result of Mosley's shooting death. In its initial response, the court referred to Pettie's testimony that she had been charged with the weapons

offenses. The jury also submitted a question that seemed to ask, in part, why defendant was not charged with the armed robbery of Pettie. The question was: "To convict of felony murder ... must [defendant] be ... charged guilty of one or the other felony charges on the list. Example, if Pettie was robbed is it felony murder[?]" The jury was reacting to the fact that Pettie had testified at trial that she was robbed at gunpoint by defendant. The court replied that defendant was "not being charged with the robbery of Pettie," but noted that it would discuss the matter on the following Monday when the jury reconvened.

Four days later, on Monday, November 14, 1994, the court reconsidered the jury's questions regarding its instructions, specifically concerning felony murder. The court requested that one of the jurors reread the question: "To be convicted of a felony murder must [defendant] be charged or guilty of one of the other felony charges on the list[?]" The court responded: "To constitute felony murder, if a murder takes place during the commission of *any* crime it becomes felony murder. That's what distinguishes that particular one. I hope I've explained it to you."

Following that final explanation, the court instructed the jury to reframe one remaining question that the court found confusing. The jury did not request further clarification on any issue and found defendant guilty of felony murder, aggravated manslaughter, and various weapons charges.

Defendant moved to set aside the felony-murder conviction as inconsistent with the jury's verdict of acquittal on the charged robberies. The State consented. The trial court sentenced defendant to an aggregate term of life plus fourteen and a half years with a thirty-year parole disqualifier on the remaining counts. Both the State and defendant appealed.[1] On appeal the Appellate

---

[1] The State argued, and the Appellate Division accepted, that the Assistant Prosecutor's agreement to dismiss the felony-murder conviction was "of no moment." The State contended that the trial court erred and that the interests of justice mandated appellate review of an error concerning such a serious

Division reversed the vacation of defendant's felony-murder conviction. 301 *N.J.Super.* at 334, 693 *A.*2d 1272. We granted the defendant's petition for certification. 151 *N.J.* 470, 700 *A.*2d 881 (1997).

## II

There are three theories offered to sustain the jury's verdict.

### A.

### The uncharged predicate felony.

The Appellate Division phrased the question as whether "the predicate felony for a felony murder conviction must stem from an indictment charging the defendant with the predicate felony as a separate charge." 301 *N.J.Super.* at 329, 693 *A.*2d 1272. The Appellate Division found it "obvious from the jury's question that the jury convicted defendant of felony murder based on its finding that the defendant robbed [Pettie] Lee—a person who[m] defendant was not charged in an indictment with robbing." *Id.* at 330, 693 *A.*2d 1272. It found that any references in the indictment to the underlying robbery of Mosley or to the robberies of Pettie and Dortch would have been surplusage. Reasoning that the indictment adequately informed defendant of the felony-murder charge against him (killing Mosley in the course of a robbery) and that the grand jury had heard evidence of the robbery of Pettie, the Appellate Division concluded that the jury was justified in basing its felony-murder verdict on the robbery of Pettie Lee. *Ibid.* We can agree with that proposition as a correct principle of law provided that the defendant is given fair notice of the predicate felony being used to satisfy the elements of the felony-murder statute. However, we are not convinced that the felony-murder conviction was based on the robbery of Pettie, and even if it was,

offense. The Appellate Division allowed the appeal. We do not address the question of whether the State's appeal eighteen months after the dismissal of the conviction was timely.

defendant did not have notice of his need to defend against that possibility.

An indictment charging a defendant with the commission of a crime must identify and explain the criminal offense so that the accused may prepare an adequate defense. *State v. LeFurge*, 101 *N.J.* 404, 502 *A.*2d 35 (1986); *State v. Talley*, 94 *N.J.* 385, 466 *A.*2d 78 (1983). However, that principle is not applied rigidly. It is sufficiently flexible to permit a defendant to be found guilty of an offense not charged in the indictment. *Talley, supra,* 94 *N.J.* at 392, 466 *A.*2d 78. In *Talley,* the defendant was indicted for first-degree robbery. The Court held that the consolidation-of-theft-offenses provision, *N.J.S.A.* 2C:20–2a, gave notice to the defendant that he could be charged with theft by deception when his own testimony disclosed that additional offense. *Id.* at 391, 466 *A.*2d 78. Talley testified that rather than having robbed his victims at gunpoint, he had sold them counterfeit drugs to their distress. *Id.* at 389, 466 *A.*2d 78.

In *LeFurge,* the defendant was indicted for theft. The trial court instructed the jury on conspiracy to commit theft as a lesser-included offense, pursuant to *N.J.S.A.* 2C:1–8d(2). *LeFurge, supra,* 101 *N.J.* at 410–11, 502 *A.*2d 35. The jury acquitted the defendant of theft but convicted him of the conspiracy charge because, although he may not have stolen the goods from the warehouse himself, there was abundant evidence that he had conspired with the thieves. *Id.* at 411, 502 *A.*2d 35.

Within this analytical framework, the Appellate Division found no constitutional infringement caused by defendant's felony-murder conviction. The theory is sound and could have been used to sustain the conviction in this case had defendant been given fair notice that the State intended to use the robbery of Pettie as a predicate to the felony-murder charge. However, the precise opposite occurred. Recall that the jury had specifically inquired of the trial court why Pettie was not indicted and whether it could consider the robbery of Pettie as one of the predicate felonies. The court took the possibility of using the Pettie robbery as the

predicate felony out of the jurors' hands, saying "he's not being charged with the robbery of Pettie."

Moreover, that the jury based guilt on the theory of the robbery of Pettie is belied by the record. The jury asked the trial court whether the predicate felony had to be "one of the other felony charges on the list." The very last thing that the jury heard before rendering its verdict was the court's response to the jury's question that it could base the felony-murder conviction on "any crime" on that list. The Pettie robbery was not on the list.

■ The Pettie theory has been developed on appeal and imposed on the verdict. The theory eliminates the possibility that the jury found defendant guilty of felony murder based on its guilty verdicts of possession of a weapon, pointing a gun, possession of hollow point bullets, or resisting arrest, all offenses that do not satisfy the requirements of the felony-murder statute, *N.J.S.A.* 2C:11–3a(3). However, the Appellate Division recently observed that "[a] jury may not convict on a theory of guilt not advanced by the State at trial and not charged by the court." *State v. Burnett,* 245 *N.J.Super.* 99, 105, 584 *A.*2d 268 (1990).

It is "the non-delegable and nonremovable responsibility of the jury to decide" the question of guilt or innocence in accordance with [the court's] instructions. The " 'question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury ...' " To this we would add only that the question is not whether a *theory* of guilt may be spelt out of a record, but whether guilt on that theory has been found by a jury.

[*State v. Schmidt,* 110 *N.J.* 258, 265, 540 *A.*2d 1256 (1988) (citations omitted).]

In addition, both *LeFurge, supra,* 101 *N.J.* at 415–16, 502 *A.*2d 35, and *Talley, supra,* 94 *N.J.* at 392–93, 466 *A.*2d 78, emphasized that the defendants had adequate notice to permit a defense against the charge not stated in the indictment. Not only is it unfair to require defendant to prepare a defense to a crime that he did not have notice of, but here the trial court instructed the jury that it should not consider the uncharged offense. Hence, we are unable to agree with the theory of the uncharged predicate felony as a basis to sustain this conviction.

### B.

#### The patchwork verdict theory.

This is the theory of the Essex County Prosecutor's Office. That office reasons that it is immaterial whether the underlying felony was the robbery of Pettie, Dortch, Mosley, or Murphy. The Criminal Code requires only that a jury unanimously agree that a murder has occurred in the course of a felony. The Prosecutor reasons that when there is sufficient evidence to support two or more alternative theories to sustain a felony-murder conviction, a jury need not designate which theory it relies on, so long as there is sufficient evidence to sustain each predicate felony conviction. *State v. Garcia,* 243 *Kan.* 662, 763 *P.*2d 585, 591 (1988) (citing *State v. Guffie,* 749 *P.*2d 976 (Colo.Ct.App.1987) for the proposition that jury need not specify which of two victims was robbed). The prosecutor relies on our decision in *State v. Parker,* that a specific unanimity instruction is required only when "it appears that a genuine possibility of jury confusion exists or that a conviction may occur as a result of different jurors concluding that a defendant committed conceptually distinct acts." 124 *N.J.* 628, 641, 592 *A.*2d 228 (1991), *cert. denied,* 503 *U.S.* 939, 112 *S.Ct.* 1483, 117 *L. Ed.*2d 625 (1992).

■ That theory will not work in this case because "[t]he rule stated in *Guffie* has no application where one of the alternative felony theories is invalid, either on constitutional grounds or for lack of sufficient evidence to support an independent conviction of the defendant on one of the felony theories." *Garcia, supra,* 763 *P.*2d at 591–92; *see also Stromberg v. California,* 283 *U.S.* 359, 51 *S.Ct.* 532, 75 *L. Ed.* 1117 (1931) (recognizing that general verdict of guilty could not stand if jury relied on two or more independent grounds, one of which was insufficient). In this case a felony-murder conviction based on the uncharged robbery of Pettie is invalid on constitutional grounds because the defendant had no notice of it.

In addition, the theory is belied by the jury's verdict. The jurors returned unanimous verdicts of acquittal on the underlying

robberies charged. *See State v. Dancyger,* 29 *N.J.* 76, 148 *A.*2d 155, *cert. denied,* 360 *U.S.* 903, 79 *S.Ct.* 1286, 3 *L. Ed.*2d 1255 (1959). Thus, the verdict is evidence that the individual jurors were not divided among defendant's various robbery charges. Had the jurors informed the court that they were "hung" on the robbery charges, the possibility of a patchwork verdict might exist. A hung jury might indicate that each juror thought defendant guilty of at least one of the robbery charges, while no charge received unanimous agreement. Under that scenario, the jury would have found defendant guilty of felony murder based on the fact that all jurors found defendant committed one of the predicate felonies yet could not come to an agreement on which felony it was. That, however, was not the case here. In addition, the jury's question whether it could convict defendant of robbery if he had not taken anything from the robbery victims suggests that it was engaged in collective deliberations, not a patchwork verdict. When we have upheld felony-murder convictions without requiring specific unanimity on the underlying predicate felony, we have observed that the jury had unanimously convicted the defendant of *all* of the underlying predicate felonies. *E.g., State v. Harris,* 141 *N.J.* 525, 562–63, 662 *A.*2d 333 (1995). That is also not the case here.

## C.

### The inconsistent verdict theory.

The Attorney General's office reasons that the jury unanimously agreed that defendant was guilty of felony murder based upon one of the underlying charged predicate felonies, but for reasons of lenity or mistake, it simply did not convict defendant of any of the robberies. The Attorney General relies on our decision in *State v. Grey,* 147 *N.J.* 4, 9, 685 *A.*2d 923 (1996), in which every member of the Court agreed with the basic premise of the *Dunn/Powell* [2]

---

[2] *Dunn v. United States,* 284 *U.S.* 390, 52 *S.Ct.* 189, 76 *L. Ed.* 356 (1932); *United States v. Powell,* 469 *U.S.* 57, 63–65, 105 *S.Ct.* 471, 476–77, 83 *L. Ed.*2d 461, 468–69 (1984).

doctrine that "the inconsistency in the verdicts did not necessarily indicate that the jury was unconvinced of the defendant's guilt, but that such a verdict might indicate only an exercise of leniency or nullification." The Attorney General (as did the Essex County Prosecutor) emphasized that the trial court informed the jury no less than ten times in its charge that robbery was the basis for the felony-murder conviction. She argues that the references to "any crime" or "one of the other felony charges on the list" must be viewed in their context as closely following discussions of robbery and re-instructions on robbery. Defendant conceded that if the jury had been correctly charged that in order to convict of felony murder it must unanimously find that defendant had committed one of the predicate felonies, and if the jury had done exactly what it did in this case—convict of felony murder but acquit of the underlying predicate felonies—the Court would have to accept that verdict because of our general acceptance of the *Dunn /Powell* rule. Although we genuinely doubt that such an eventuality will occur, the Attorney General's theory could sustain the conviction had the jury not been misdirected by the trial court. In *Grey,* we directed the Committee on Model Criminal Jury Charges to consider revisions to the felony-murder charge. *Grey, supra,* 147 *N.J.* at 17, 685 *A.*2d 923. The current Model Jury Charge reads: "You cannot find the defendant guilty of felony murder unless you first find him/her guilty beyond a reasonable doubt of having committed (or attempted to commit) the crime charged in count ___." *Model Jury Charges (Criminal),* § 2C:11–3a(3) Felony Murder—Slayer Participant (Jan. 27, 1997). An explanatory footnote to that portion of the charge provides the procedure to be employed if the defendant is charged with more than one predicate felony:

> Where defendant is accused of being engaged in the commission of more than one predicate crime (and, presumably, is so charged in the individual counts of the indictment), the jury should be instructed that they must unanimously agree that defendant has committed (or attempted to commit) at least one of the offenses charged. In appropriate cases, and when specifically requested by counsel, the jury should be instructed that it must agree unanimously on *which* predicate crime or crimes defendant was engaged in committing when the death was caused.

[*Ibid.* (citations omitted).]

■ Obviously struggling with a cast of characters that included three drug pushers, one of whom was armed with a gun, and a disgruntled drug buyer, who was also said to be armed, the jury was trying to determine what could be the basis for the felony-murder charge. The last question that the jury asked the court after having been told that it could not consider the Pettie robbery was whether it could consider "one of the other felony charges on the list." All parties agree that the jury's reference to a list was a reference to the indictment that was in its possession in the jury room and to the verdict sheet. Consistent with the charge, the jury found defendant guilty of at least one of the charges "on the list," a weapons offense, and consequently found defendant guilty of felony murder. But for misdirection of the jury, we might have been able to sustain the conviction under *Grey* and *Powell.* However, this is not a case of an inconsistent verdict but of an illegal verdict.

## III

Other issues raised.

The remaining issues in the case concern the instructions to the jury on self-defense and on passion/provocation manslaughter. We leave undisturbed the Appellate Division's disposition on these issues.

■ Before us, defendant asserts that he raised the issue of imperfect self-defense and, thereby, alerted the trial court to the necessity for a passion/provocation manslaughter instruction. In New Jersey, there is no such defense as imperfect self-defense. *State v. Bowens,* 108 *N.J.* 622, 625, 532 *A.*2d 215 (1987). It appears that at the charge conference, when the question of imperfect self-defense arose, the trial court chose simply to give a self-defense charge. Trial counsel never requested a passion/provocation manslaughter charge. Although defendant was found in possession of the murder weapon, his theory at trial was

that he did not possess the gun, that Pettie possessed the gun, and that that was the gun that went off in the course of the hallway struggle. The question for resolution is whether trial counsel failed to perceive the passion/provocation defense as relevant to these circumstances or declined as a matter of strategy to cloud the issues by having it suggested that the client acted intentionally but with provocation. *See State v. Choice,* 98 *N.J.* 295, 300–01, 486 *A.*2d 833 (1985) (explaining when trial strategy may override need to instruct on all available verdicts).

Both of these issues arise as a matter of plain error because trial counsel did not object to the instructions at trial. We have a sense that they can be better addressed on post-conviction relief, during which time a closer examination of defendant's trial strategy may be undertaken.

The judgment of the Appellate Division is reversed in so far as it reinstated the felony-murder conviction.

*For reversal and reinstatement*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI,' STEIN and COLEMAN—7.

*Opposed*—None.