**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2717-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NASIR FINNEMEN,

    Defendant-Appellant.

_____

> Submitted July 12, 2017 — Decided October 6, 2017
>
> Before Judges Simonelli and Carroll.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Municipal Appeal No. A-07-15.
>
> Maschmeyer Karalis, PC, attorneys for appellant (Linda B. Alle-Murphy, on the brief).
>
> Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Following a trial de novo in the Law Division, defendant Nasir Finnemen was convicted of disorderly conduct, N.J.S.A.

2C:33-2, and resisting arrest, N.J.S.A. 2C:29-2(a). On appeal, defendant raises the following contentions:

> Point One: The Courts Below Erred in Finding Sergeant Beach's Testimony To Be Credible.
>
> Point Two: The Trial Court Erred in Not Admitting the Videotape of An Incident Occurring on December 14, 2012 Under [N.J.R.E. 403].
>
> Point Three: Defendant/Appellant's Conduct Did Not Rise to the Level of Disorderly Conduct As a Matter of Law.
>
> Point Four: Defendant/Appellant's Conduct Did Not Meet the Requirement of Resisting Arrest As a Matter of Law.

We have considered defendant's contention in Point Two in light of the record and applicable legal principles and conclude it is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). The municipal court and Law Division judges properly found that the videotape of an incident between defendant and a Camden County Sheriff's Officer on December 14, 2012 had no connection with this case and was irrelevant. See State v. Cole, 229 N.J. 429, 447 (2017) (noting that in deciding whether evidence is relevant, the court "should focus on the logical connection between the proffered evidence and a fact in issue"). Accordingly, we address defendant's remaining contentions.

A-2717-15T1

On July 17, 2014, Sergeant Michael Beach and Patrolman Michael Schaeffer of the Mt. Ephraim Police Department were dispatched to a Walgreens after an employee reported that a customer, later identified as defendant, caused a disturbance inside the store, then exited, walked across the street, and yelled obscenities at, and made obscene hand gestures to, Walgreens employees who went outside the store to see where defendant went. According to the employee, defendant was asked to leave the store because he was harassing customers.

When Beach arrived, he saw defendant standing at a bus stop approximately 100 feet across from Walgreens. Defendant was irate and angrily gesturing with his hands. Beach exited his patrol car and approached defendant, who was yelling that the Walgreens employees were harassing him and he wanted to sue them. Defendant also yelled obscenities to the employees and made obscene hand gestures toward them, namely, raising his middle finger and grabbing his genital area. Beach instructed defendant numerous times to calm down, but defendant did not comply. Defendant repeatedly moved around Beach to make sure the Walgreens employees continued to hear his obscenities and see his obscene hand gestures.

According to defendant, Schaeffer arrived and told him he received a call that defendant was "sticking up [his] middle finger, and grabbing [his] private[,]" and commented to him: "I should lock you up. This is not . . . Camden, this is not the hood. This is the suburbs and . . . it's not the ghetto." Defendant denied making obscene hand gestures and took offense to Schaeffer's comments.

Beach served defendant with a summons, charging him with disorderly conduct based on what Beach had observed. Fearing that defendant might return to Walgreens and cause problems, Beach instructed him to walk up the street to the next bus stop approximately one-and-one-half blocks away to avoid an arrest. Defendant continued yelling as he walked away, and said the officers were harassing him and were not allowed to charge him. He claimed that Schaeffer told him "[he] had three seconds to get off the bus stop[.]"

Defendant walked approximately 200 yards, called 9-1-1, and reported that the officers had disrespected him and Schaeffer abused his authority by telling him to get off a public bus stop.[1] Beach and Schaeffer, the only officers on duty at the time,

---

[1] Defendant was charged with making a false public alarm by calling 9-1-1, N.J.S.A. 2C:33-3(e), but the State voluntarily dismissed the charge.

A-2717-15T1

responded to the call. Beach was the first to arrive at defendant's location and, as he approached defendant, defendant angrily threw up his arms, yelled obscenities, refused to speak to Beach, and demanded to speak with Beach's supervisor. Beach advised defendant that he was the on-duty supervisor and defendant could file a complaint against the officers. Defendant then entered a nail salon after being advised not to do so, and continued to yell and cause a scene.

Schaeffer arrived, and the officers advised defendant he was under arrest. Beach instructed defendant to place his hands behind his back, but defendant pulled away and twisted and turned when Schaeffer placed a handcuff on his right hand. Defendant fought with the officers as Beach grabbed his left arm. The officers took defendant to the ground, and he tucked both of his arms underneath his body and continued to fight. The officers were eventually able to handcuff defendant. Defendant did not advise the officers he had a problem or condition with his shoulder that prevented him from putting his hands behind his back. Defendant was using a cane, for reasons unclear from the record, but was able to walk backwards and lift and point it, and did not appear to rely on it. Beach served defendant with a summons, charging him with resisting arrest.

A-2717-15T1

Defendant denied yelling obscenities or making obscene hand gestures to the Walgreens employees, and claimed that he walked to the next bus stop as Beach had instructed. Defendant testified he had no problem with Beach, but called 9-1-1 because he believed Schaeffer was abusing his authority. He also testified that he complied when told to put his hands behind his back, and that when he turned his head to ask why he was being arrested, Schaeffer took him to the ground and used excessive force to handcuff him. Defendant admitted he did not tell the officers he had an injury to his shoulder.

Defendant testified that his witness, Dr. Patrick Brown, heard him yelling and told him he looked disabled. However, Brown testified that he heard a commotion outside his chiropractic office, and when he went outside, he saw Beach opening the back door of his patrol car and helping defendant into it. Brown also saw defendant "carrying on a lot . . . yelling and screaming[]" and did not see "anything out of the ordinary except [defendant] making a lot of noise." Brown did not recall telling defendant he looked disabled.

The municipal court judge found that Beach's testimony was credible, unbiased, and an accurate recitation of events. The judge noted that Beach's recollection was "quite vivid," which was "logical considering that he had the most interaction with the

defendant." The judge also noted that defendant admitted he had no problem with Beach, and found defendant's "only beef . . . was with . . . Schaeffer, whom he clearly did not like."

The municipal court judge found defendant's testimony was "biased, incredible in parts, and largely colored by his anger that day" and contradicted by other witnesses, especially Brown. The judge made specific findings on the elements of disorderly conduct and resisting arrest, and found defendant guilty of each offense. The judge declined to impose a jail sentence, and instead, imposed the appropriate fines, fees, and court costs.

On appeal, the Law Division judge reviewed the record and made independent factual findings. The judge found no reason to reject the municipal court judge's credibility findings, and determined the officers' testimony was "trustworthy, reliable and credible." Regarding the disorderly persons offense, the judge made the following findings:

> I find that on July 17, 2015, the defendant . . . encountered Sergeant Beach and Officer [Schaeffer] . . . near the Walgreens located at 20 West Kings Highway, Mount Ephraim, New Jersey.
>
> I find that upon arrival, Sergeant Beach observed defendant shouting obscenities and making wild gestures.
>
> I find that Sergeant Beach observed the defendant gesturing to the Walgreens and the

Walgreens personnel standing outside using his middle finger and grabbing his crotch area.

I [find] that Sergeant Beach attempted to calm down the defendant and have him lower his voice, to little avail.

The judge recited N.J.S.A. 2C:33-2(a) and (b), and found defendant guilty of disorderly conduct, reasoning that defendant's "conduct across from the Walgreens certainly [fell] within the definition [of disorderly conduct] as articulated."

The judge also made specific findings regarding the resisting arrest charge. Reciting N.J.S.A. 2C:29-2(a), the judge found defendant guilty of resisting arrest, reasoning as follows:

With regard to the resisting arrest, the facts are as found by the [c]ourt, and again, credibly testified by the police officers that when being informed [he] was under arrest, [defendant] pulled away and would not allow himself to be cuffed, and basically engaged in an altercation with the police officers.

The judge imposed the same fines, fees, and court costs. This appeal followed.

II.

Beach issued an investigative report of the incident, which was admitted into evidence. Defendant contends in Point One that the municipal court and Law Division judges erred in finding Beach's testimony credible because his investigative report was inconsistent with his trial testimony. Specifically, defendant

8

argues the report did not state that he used obscenities and made obscene hand gestures, and stated that Beach handcuffed his left hand, whereas Beach testified he handcuffed his right hand.

The Court in State v. Robertson, 228 N.J. 138, 144 (2017), reaffirmed the standard of review between the Law Division and the municipal court:

> In the Law Division, the trial judge may reverse and remand for a new trial or may conduct a trial de novo on the record below. At a trial de novo, the court makes its own findings of fact and conclusions of law but defers to the municipal court's credibility findings. It is well-settled that the trial judge giv[es] due, although not necessarily controlling, regard to the opportunity of the municipal court judge to assess the credibility of the witnesses.
>
> [Robertson, supra, 228 N.J. at 147-48 (citations omitted).]

"We do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." State v. Barone, 147 N.J. 599, 615 (1997). Because neither the appellate court nor the Law Division judge is in a good position to judge credibility, the municipal court's credibility findings are given deference. State v. Locurto, 157 N.J. 463, 470-71 (1999). The rule of deference is more compelling where, such as here, both judges made concurrent findings. Id. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to

alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (citation omitted). Therefore, appellate review of the factual and credibility findings of the municipal court and the Law Division "is exceedingly narrow." State v. Reece, 222 N.J. 154, 167 (2015) (quoting id. at 470).

Defendant's argument that Beach's report did not state that he used obscenities is incorrect. The report specifically states that defendant used obscenities:

> Upon arrival, I located [defendant] and upon speaking with him I observed him to be irate and stating that he was disrespected by the employees of Walgreens. While speaking with [defendant] . . . Schaeffer responded to Walgreens and spoke with the caller who stated that the male was harassing customers and was asked to leave the building. The person reporting stated that the male began cursing and left the building and walked across the street and began yelling obscenities back at her at which time she called police.

[(Emphasis added).]

Although the report did not state that defendant made obscene hand gestures, the municipal court judge credited Beach's testimony that he saw defendant repeatedly do so. Defendant has not shown how the judge's credibility finding constituted any error. Locurto, supra, 157 N.J. at 471.

Defendant's argument about which hand Beach handcuffed is meritless. Defendant has not articulated any basis upon which Beach's testimonial misidentification of the hand he handcuffed affected the outcome of this case. This minute detail falls woefully short of being a "crucial inconsistency," as characterized by defendant, and therefore warrants no disturbance as a "very obvious and exceptional showing of error." Id. at 474.

### III.

Defendant contends in Point Three that his conduct did not rise to the level of disorderly conduct as a matter of law. He argues his conviction should be reversed because he did not engage in tumultuous behavior, as proscribed under N.J.S.A. 2C:33-(a)(1). He posits he was merely yelling at the Walgreens employees across the street from the store, and his conduct was insufficient to support his conviction. We disagree.

In our review of the Law Division's decision on a municipal appeal, "[w]e consider only the action of the Law Division and not that of the municipal court." State v. Adubato, 420 N.J. Super. 167, 175-76 (App. Div. 2011), certif. denied, 209 N.J. 430 (2012). We consider "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Stas, 212 N.J. 37, 49 (2012) (quoting Locurto, supra, 157 N.J. 463, 471 (1999)). "Unlike the Law Division, which conducts a

trial de novo on the record, Rule 3:23-8(a), we do not independently assess the evidence." State v. Gibson, 429 N.J. Super. 456, 463 (App. Div. 2013) (quoting Locurto, supra, 157 N.J. at 471), rev'd on other grounds, 219 N.J. 227 (2014). Applying these standards, we discern no reason to reverse defendant's conviction for disorderly conduct.

Defendant was charged with disorderly conduct under N.J.S.A. 2C:33-2(a)(1), which required the State to prove that he "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[,] . . . [e]ngage[d] in fighting or threatening, or in violent or tumultuous behavior[.]" "Public" is not defined in subsection (a), but N.J.S.A. 2C:33-2(b) defines the term as follows: "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are . . . places of business or . . . any neighborhood." Although "[i]t is not clear whether the Legislature intended [the subsection (b)] definition to apply to [the] use of the word 'public' in subsection [(a)], . . . for present purposes we assume a consistency of meaning." State v. Stampone, 341 N.J. Super. 247, 254 (App. Div. 2001).

When N.J.S.A. 2C:33-2 was enacted in 1978, "tumultuous" was defined as "marked by tumult," "tending or disposed to cause or excite a tumult," and "marked by violent or overwhelming turbulence

12

or upheaval."  Webster's New Collegiate Dictionary 1258 (1977). In turn, "tumult" was defined to include not only the crowd-focused definitions cited in Stampone, but also "violent agitation of mind or feelings" and "a violent outburst."  Ibid.; see also United Prop. Owners Ass'n of Belmar v. Borough of Belmar, 343 N.J. Super. 1, 67 (App. Div.) (noting that "[t]umult is defined as either 'uproar' or 'violent agitation of mind of feelings,'" and that "[e]xcessive noise could qualify as an uproar or a violent agitation") (quoting Webster's New American Dictionary 555 (Smithmark 1995)), certif. denied, 170 N.J. 390 (2001).

N.J.S.A. 2C:33—2(a) does not require that a defendant actually "cause public inconvenience, annoyance or alarm," but only that the defendant acted "with [the] purpose to cause" it or "recklessly creat[ed] a risk thereof."  A person acts purposely "if it is his conscious object to engage in conduct of that nature or to cause such a result."  N.J.S.A. 2C:2-2(b)(1).  Reckless conduct requires a showing that a person

> consciously disregard[ed] a substantial and unjustifiable risk that the material element [of an offense] exist[ed] or [would] result from his conduct.  The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involve[d] a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

[<u>N.J.S.A.</u> 2C:2-2(b)(3).]

Defendant does not dispute he was in a public place. The record confirms he acted in an agitated and aggressive manner, and engaged in a loud profane-ridden tirade while flailing his arms in anger as he yelled profanities and made obscene hand gestures toward the Walgreens employees. Defendant engaged in such conduct despite Beach's instruction that he calm down. Under the totality of the circumstances presented, we are persuaded that defendant's conduct caused public inconvenience, annoyance or alarm and constituted "overwhelming turbulence or upheaval," Webster's New Collegiate Dictionary, <u>supra</u>, at 1258, and a "violent agitation of mind or feelings." <u>United Prop. Owners Ass'n of Belmar</u>, <u>supra</u>, 343 <u>N.J. Super.</u> at 67 (citation omitted), and therefore constituted tumultuous conduct under <u>N.J.S.A.</u> 2C:33-2(a)(1). The evidence amply supports the court's determination that defendant committed the offense of disorderly conduct in violation of <u>N.J.S.A.</u> 2C:33-2(a)(1).

IV.

Lastly, defendant contends in Point Four that his conduct did not meet the requirements of resisting arrest because he lacked the requisite criminal intent to resist arrest due to a dislocated right shoulder that prevented him from complying with the officers'

14

command to place his hands behind his back. This contention lacks credulity.

"[A] person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest." N.J.S.A. 2C:29-2(a)(1). Resisting arrest "requires a culpability of purpose." State v. Branch, 301 N.J. Super. 307, 321 (App. Div. 1997), rev'd on other grounds, 155 N.J. 317 (1998). A defendant therefore must be aware that police are attempting to effectuate an arrest to be guilty of resisting it. Ibid. If a reasonable factfinder could find that, based on the circumstances, defendant knew police were attempting to make an arrest, and defendant resisted that arrest, there is sufficient evidence to uphold a conviction. Ibid.

There is no question that defendant knew the officers' were attempting to effectuate an arrest, and never advised them he had an injury to his shoulder that prevented him from complying with their command to place his hands behind his back. The record confirms defendant resisted arrest by pulling back, twisting and turning, and fighting with the officers while they attempted to handcuff him, and was sufficient to uphold his conviction for resisting arrest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2717-15T1