**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4376-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BRUCE W. JACKSON, JR.,

    Defendant-Appellant.

_____

        Submitted July 25, 2017 — Decided June 14, 2018

        Before Judges Ostrer and Leone.

        On appeal from Superior Court of New Jersey,
        Law Division, Cumberland County, Indictment
        No. 14-01-0052.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Mark H. Friedman, Assistant
        Deputy Public Defender, of counsel and on the
        brief).

        Christopher S. Porrino, Attorney General,
        attorney for respondent (Sarah D. Brigham,
        Deputy Attorney General, of counsel and on the
        brief).

    The opinion of the court was delivered by

LEONE, J.A.D.

Defendant Bruce W. Jackson appeals his August 5, 2015 judgment of conviction after a guilty plea. He challenges the denial of his motion to suppress. We affirm.

I.

We derive the following facts from the trial court's factual findings at the April 23, 2015 suppression hearing, and the hearing testimony of Officer Timothy Rehmann, Officer Michael McLaughlin, and Officer Colt Gibson, all patrol officers with the Millville Police Department.

On September 7, 2013, Officer Rehmann received a call from a known source reporting that shots had been fired at the Delsea Gardens apartment complex involving a black Toyota FJ Cruiser with a white top. The caller followed the FJ Cruiser to a Wawa. When Rehmann got there, the FJ Cruiser had left the Wawa, but Rehmann reviewed the Wawa's surveillance footage, saw the FJ Cruiser had parked there, and identified defendant as the driver and the registered owner of the FJ Cruiser. Rehmann lacked sufficient evidence of a shooting, but printed out a picture of the FJ Cruiser from the surveillance footage and posted it where other officers saw it, including Officer Gibson.

On October 1, 2013, at 12:19 a.m., Officers Rehmann, McLaughlin, and Gibson responded to another report of shots fired at an apartment in Delsea Gardens. Rehmann found a bullet strike

through an apartment window and bullet fragments in the apartment. Other officers found shell casings on the ground nearby.

While looking for evidence, Officer McLaughlin was approached by an individual in a hooded sweatshirt, with the hood pulled tightly over his face. The individual stated he knew who did the shooting, and he was willing to talk in a more private place. McLaughlin met privately with the individual, who said he saw a black FJ Cruiser with a white top pull into the complex, multiple persons exit the vehicle, and the persons "cranking rounds off." They then got back in the FJ Cruiser and left. The individual declined to identify himself due to the high level of gang activity in the area and his resulting fear of retaliation. McLaughlin shared this information with the other officers, including Officer Gibson.

Within a few minutes of that conversation, Officer McLaughlin observed a black FJ Cruiser with a white top pull into the complex. McLaughlin testified that "as they pulled in, they turned their headlights off and it seemed like as soon as they saw the police car there they hurried up and turned back out," driving without headlights on the street. Officer Rehmann testified that while taking photographs of the shell casings, he observed a black FJ Cruiser with a white top enter Delsea Gardens, drive with no lights

on, turn into a nearby parking lot, and then turn back and exit the complex.

Officer Gibson testified he observed the black FJ Cruiser with a white top pull into the complex with its headlights on, make an immediate u-turn, emerge from behind a building with its lights off, and then leave the complex, driving on the street with its lights off. Gibson immediately went to his vehicle to follow the FJ Cruiser.

Officer Gibson located the FJ Cruiser stopped at a Wawa gas station. He exited his vehicle and performed a "felony stop," pointing his weapon at the occupants of the FJ Cruiser and ordering them to open the door, exit the FJ Cruiser, and lay on the ground. Three occupants — including defendant, the driver — exited the FJ Cruiser. Two other occupants of the FJ Cruiser, who were in the Wawa, fled when the police approached.

Officer Gibson approached and looked in the FJ Cruiser to confirm there were no more occupants left in the vehicle. Through a window he observed a handgun in the pouch behind the front passenger seat.

Officers Rehmann and McLaughlin joined Officer Gibson. Using his flashlight, Rehmann looked into the vehicle to see if any weapons were in plain view and to verify the vehicle was unoccupied. Without opening the doors, Rehmann observed the butt

end of the semi-automatic-pistol in the pouch on the back of the front passenger seat. He also looked through the rear window of the SUV and saw a revolver and the barrel of a shotgun in the cargo area.[1]

Defendant was charged with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) and third-degree unlawful possession of a shotgun, N.J.S.A. 2C:39-5(c)(1). After the hearing on defendant's motion to suppress, the trial court found "[t]here was a legitimate reason to stop [the] car for a motor vehicle violation," that "the felony stop" was justified under "the totality of the circumstances," and the weapons were properly seized under "a recognized exception to the warrant requirement in that they were recovered due to the fact that they were located in plain view."

Defendant pled guilty to second-degree unlawful possession of a weapon. At the plea hearing, defendant stated as follows. On October 1, 2013, he was driving his FJ Cruiser and had a 9 mm Ruger handgun in the pouch behind the front passenger seat. He had no permit. He, co-defendant Hector Guevera, and three other passengers drove to the Delsea Gardens apartment complex, heard

---

[1] Officer McLaughlin testified he patted down defendant, and found a large hunting knife. However, defendant was not charged with possessing the knife, and it is not at issue on appeal.

shots fired, left, and discovered the FJ Cruiser had a bullet hole. They drove to the residence of Guevera, got two more handguns and a shotgun, and drove back to Delsea Gardens. They then drove to get gas at the Wawa, where the police came and saw and seized the guns. Pursuant to the plea agreement, the trial court sentenced defendant to five years in prison with one year of parole ineligibility.

Defendant appeals, arguing:

> THE ITEMS SEIZED FROM DEFENDANT'S VEHICLE SHOULD HAVE BEEN SUPPRESSED AS FRUITS OF AN ILLEGAL WARRANTLESS SEARCH. BECAUSE NO EXIGENT CIRCUMSTANCES EXISTED, THE WARRANTLESS SEARCH OF THE VEHICLE WAS UNCONSTITUTIONAL.

## II.

We must hew to our standard of review. An appellate court is "bound to uphold a trial court's factual findings in a motion to suppress provided those 'findings are "supported by sufficient credible evidence in the record."'" State v. Watts, 223 N.J. 503, 516 (2015) (quoting State v. Elders, 192 N.J. 224, 243-44 (2007)). "Deference to those findings is particularly appropriate when the trial court has the '"opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy."'" Ibid. (quoting Elders, 192 N.J. at 244). "Nevertheless, we are not required to accept findings that are 'clearly mistaken'

based on our independent review of the record." Ibid. (quoting Elders, 192 N.J. at 244). "We owe no deference to a trial . . . court's interpretation of the law, and therefore our review of legal matters is de novo." State v. Hathaway, 222 N.J. 453, 467 (2015).

## III.

The United States and New Jersey Constitutions allow an investigatory stop "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968); State v. Davis, 104 N.J. 490, 504-05 (1986). An investigatory stop is valid "if, based on the totality of the circumstances, the officer had a reasonable and particularized suspicion to believe that an individual has just engaged in, or was about to engage in, criminal activity." State v. Stovall, 170 N.J. 346, 356 (2002).

Reasonable suspicion "requires '"some minimal level of objective justification for making the stop."'" State v. Amelio, 197 N.J. 207, 211-12 (2008) (citations omitted). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion required is 'considerably less than proof of wrongdoing by a preponderance of the evidence, and 'obviously less' than is necessary for probable cause." State v. Gamble, 218 N.J. 412, 428

(2014) (citations omitted). "Because the 'determination of reasonable [and articulable] suspicion is fact-sensitive,' a careful review of the totality of the circumstances surrounding each case is required." State v. Mann, 203 N.J. 328, 338 (2010) (alteration in original) (citation omitted). Here, the totality of the circumstances gave rise to reasonable suspicion both of a traffic violation and of illegal possession of a firearm.

"'It is firmly established that a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense.'" State v. Locurto, 157 N.J. 463, 470 (1999) (citation omitted). Here, it is undisputed Officer Gibson had the right to stop the FJ Cruiser once he and the other officers saw it commit a motor vehicle violation by driving without headlights on the streets around midnight. N.J.S.A. 39:3-47(a) ("No person shall drive . . . any vehicle . . . on any street or highway during the times when lighted lamps are required unless such vehicle . . . displays lighted lamps[.]"). Thus, when Gibson saw the FJ Cruiser parked at the Wawa, he had the right to detain the FJ Cruiser and its driver, defendant.

In addition, Officer Gibson had a reasonable suspicion the occupants of the FJ Cruiser had one or more firearms. Gibson was aware of the report of the shooting at Delsea Gardens, which had

been confirmed by Officer Rehmann's discovery of the bullet hole, bullet fragments, and shell casings. Gibson also knew that Officer McLaughlin had received information that the shooting was done by persons in the FJ Cruiser.

"[A]s a general rule, '[a]n anonymous tip, standing alone, is rarely sufficient to establish a reasonable articulable suspicion of criminal activity.'" State v. Golotta, 178 N.J. 205, 228 (2003) (citation omitted). "[H]owever, there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" Florida v. J.L., 529 U.S. 266, 270 (2000) (citation omitted). "When an anonymous tip is involved, additional factors must be considered to generate the requisite level of reasonable and articulable suspicion." State v. Privott, 203 N.J. 16, 26 (2010).

Unlike those cases, which involved anonymous telephone calls, here the individual spoke to Officer McLaughlin face-to-face. "Generally speaking, information imparted by a citizen directly to a police officer will receive greater weight than information received from an anonymous tipster." State v. Basil, 202 N.J. 570, 586 (2010). "'[W]hen a tip is made in-person, an officer can observe the informant's demeanor and determine whether the informant seems credible enough to justify immediate police action

without further questioning.'" Ibid. (citation omitted). "Thus, an objectively reasonable police officer may assume that an ordinary citizen reporting a crime, which the citizen purports to have observed, is providing reliable information." Ibid.

This is so even though the individual "refuse[d] to give any identifying data about [him]self out of an expressed fear for h[is] safety," as that "does little to diminish the reliability of the information." Id. at 576-87 (finding probable cause that the defendant had a gun based on face-to-face information from a woman who refused to identify herself). "One reason a face-to-face encounter with a citizen is considered more reliable than a purely anonymous tipster is that 'an in-person informant risks losing anonymity and being held accountable for a false tip.'" State v. Hathaway, 222 N.J. 453, 471 (2015) (quoting Basil, 202 N.J. at 586). Here, the individual reported the shooting "in a face-to-face conversation," allowing Officer McLaughlin to observe his "physical characteristics" including race, sex, height, and weight, "providing the possibility of his later identification." Id. at 475 (finding an officer could reasonably credit an anonymous patron who reported a robbery face-to-face). Thus, "[t]his case is not like Florida v. J.L.," Basil, 202 N.J. at 588-89, and the individual was "more akin to an eyewitness citizen informant than an anonymous tipster," Hathaway, 222 N.J. at 475.

10

The trial court found the officers could assume the individual was providing reliable information when he stated he witnessed the black FJ Cruiser with a white top enter Delsea Gardens and he knew who did the shooting, establishing personal knowledge. The individual stated the FJ Cruiser pulled into Delsea Gardens, multiple persons exited the FJ Cruiser and began shooting, reentered the FJ Cruiser, and left. This information was sufficient to provide reasonable suspicion that the FJ Cruiser's occupants had at least one firearm.

In any event, the individual's information was corroborated in numerous ways. First, the officers had information that a black FJ Cruiser with a white top had been involved in the September 7 shooting. Second, the officers had found physical evidence confirming that a shooting had taken place at Delsea Gardens on October 1. Third, about thirty minutes after that shooting, and only ten minutes after the individual spoke with Officer McLaughlin, all three of the testifying officers saw a Black FJ Cruiser with a white top pull into Delsea Gardens.[2] Fourth, the FJ Cruiser immediately turned off its headlights and left the complex "as soon as they saw the police cars." As the trial court found, the officers could infer the occupants turned

---

[2] Officer Rehmann testified that FJ Cruisers were not a "fairly common, widespread type of vehicle."

A-4376-15T4

off the headlights of the FJ Cruiser, immediately drove off, and illegally operated it on the street without lights "to conceal it from identification by the officers." An attempt to hide from police can contribute to reasonable suspicion. See State v. Valentine, 134 N.J. 536, 553-54 (1994).

All that information gave Officer Gibson reasonable suspicion the occupants of the FJ Cruiser had violated the motor vehicle laws, reasonable suspicion they had just been involved in the shooting incident at Delsea Gardens, and reasonable suspicion to believe they were armed with guns and were trying to evade the police. He thus had ample basis to "stop" the parked FJ Cruiser and detain the occupants for an investigatory stop.

As Officer Gibson had reasonable suspicion the occupants had at least one gun, had been shooting, and had tried to evade police, it was entirely appropriate for him to order the occupants to exit the FJ Cruiser at gunpoint. See, e.g., State v. Padilla, 321 N.J. Super. 96, 108 (App. Div. 1999) (ruling that where a "caller reported a person with a gun; consequently, the officers had the right to draw their handguns"). "[T]he authority to conduct an investigative stop must necessarily carry with it some ability to effectuate such a stop, including the use of force, if necessary." State v. Branch, 301 N.J. Super. 307, 319 (App. Div. 1997) (holding officer properly drew and cocked gun to effectuate a stop), rev'd

in part on other grounds, 155 N.J. 317 (1998). Gibson was "authorized to take such steps as were reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of the stop." United States v. Hensley, 469 U.S. 221, 235 (1985).

In Hensley, the United States Supreme Court held that an officer's conduct in approaching the suspect with gun drawn in a Terry stop "was well within the permissible range in the context of suspects who are reported to be armed and dangerous." Id. at 223-24, 235. "The courts have rather consistently upheld such police conduct when the circumstances . . . indicated that it was a reasonable precaution for the protection and safety of the investigating officers." 4 Wayne R. LaFave, Search and Seizure § 9.2(d), at 403 & n.124 (5th ed. 2012).[3]

Defendant notes "the principle that 'the investigative methods employed [in a Terry stop] should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Privott, 203 N.J. at 31 (alteration in original) (quoting Florida v. Royer, 460 U.S. 491,

---

[3] Defendant does not challenge the reasonableness of ordering defendant and his passengers to exit the car, see State v. Bacome, 228 N.J. 94, 104-08 (2017), lie down, or be handcuffed, see State v. Legette, 441 N.J. Super. 1, 28 (App. Div. 2015), rev'd on other grounds, 227 N.J. 460 (2017).

500 (1983)). Here, the officers engaged in non-intrusive means by looking through the windows of the FJ Cruiser and seeing the guns within, which verified their suspicions.

IV.

The seizure of the guns was permissible under the plain-view doctrine. At the time of the stop, the doctrine justified a warrantless seizure of evidence when:

> (1) the officer was "lawfully in the viewing area," (2) the officer discovered the evidence "'inadvertently,' meaning that he did not know in advance where the evidence was located nor intend beforehand to seize it," and (3) it was "immediately apparent" that the items "were evidence of a crime, contraband, or otherwise subject to seizure."
>
> [State v. Earls, 214 N.J. 564, 592 (2013) (citation omitted).][4]

Here, the officers were lawfully present next to the FJ Cruiser because they made a valid "stop" of the vehicle while it was parked at a Wawa gas station.

Moreover, when Officers Gibson and Rehmann looked through the FJ Cruiser's windows and saw the pistol protruding from, the pouch behind the front passenger seat, and the revolver and the barrel of the shotgun in the cargo area, it was immediately apparent that

---

[4] Subsequent to this stop, our Supreme Court removed the inadvertence requirement, but did so only prospectively. State v. Gonzales, 227 N.J. 77, 101 (2016).

the firearms were evidence of criminal activity. "The term 'immediately apparent' in the third factor means that the police officer must have 'probable cause to associate the item[] with criminal activity.'" State v. Bogan, 200 N.J. 61, 79 n.10 (2009) (quoting State v. Bruzzese, 94 N.J. 210, 236-37 (1983)).

Defendant argues that while the officers could see the firearms through the FJ Cruiser's windows, they could not seize them. Our Supreme Court ruled otherwise in State v. Mann, 203 N.J. 328 (2010). In Mann, an officer peered into the open window of a GMC Yukon SUV, saw what appeared to be drugs on the back seat, opened the door, and seized the drugs. Id. at 334-35. The Court ruled that the officer "was lawfully standing outside the Yukon when he looked inside the open window and observed the suspected drugs," and "conclude[d] that the plain view exception to the warrant requirement applies, and that [the officer]'s seizure of the drugs from the back seat of defendant's vehicle was lawful." Id. at 340-41; see State v. Reininger, 430 N.J. Super. 517, 526-27, 535-36 (App. Div. 2013) (ruling an officer who saw firearm cases in a vehicle could open the door and seize them under the plain view doctrine); State v. Smith, 306 N.J. Super. 370, 379-81 (App. Div. 1997). "There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive

passersby or diligent police officers." <u>Reininger</u>, 430 N.J. Super. at 534 (quoting <u>Texas v. Brown</u>, 460 U.S. 730, 740 (1983)).

Further, the discovery of the evidence was inadvertent. "The purpose of the inadvertence requirement, in part, was to acknowledge that 'where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it,' the police should secure a valid warrant." <u>Gonzales</u>, 227 N.J. at 91-92 (citation omitted). Here, the police did not know where the FJ Cruiser was until Officer Gibson found it at the Wawa, and even then did not know if the gun or guns were still in the FJ Cruiser or on its occupants, some of whom had fled and others who had not been frisked until moments before the guns were spotted. Thus, "the 'inadvertence' requirement of plain view . . . was satisfied in this case because the police officers did not know in advance that evidence would be found" in that precise location. <u>State v. Johnson</u>, 171 N.J. 192, 213 (2002).

Thus, Officer Rehmann properly seized the pistol, revolver, and shotgun that were in plain view. While he was doing so, the handgun on the floor came into plain view. Accordingly, seizure of the firearms was justified under the plain-view doctrine.

"Because the seizure of the [guns] was proper under the plain view doctrine, it was not necessary for the State to establish exigent circumstances under the automobile exception." <u>Reininger</u>,

430 N.J. Super. at 537. In any event, exigent circumstances also justified the search of the FJ Cruiser once the police saw the guns.

At the time of this stop, the automobile exception permitted a warrantless search of an automobile if: "(1) the stop is unexpected; (2) the police have probable cause to believe that the vehicle contains contraband or evidence of a crime; and (3) exigent circumstances exist under which it is impracticable to obtain a warrant." State v. Pena-Flores, 198 N.J. 6, 28 (2009).[5] Under that test, "courts must not only consider the mobility of the vehicle or the lessened expectation of privacy in it, but also must look, to all of the facts and circumstances surrounding the search to determine the existence of exigency." Id. at 26.

> Legitimate considerations are as varied as the possible scenarios surrounding an automobile stop. They include, for example, the time of day; the location of the stop; the nature of the neighborhood; the unfolding of the events establishing probable cause; the ratio of officers to suspects; the existence of confederates who know the location of the car and could remove it or its contents; whether the arrest was observed by passersby who could tamper with the car or its contents; whether it would be safe to leave the car unguarded and, if not, whether the delay that would be caused by obtaining a warrant would place the officers or the evidence at risk.

---

[5] Subsequent to this stop, our Supreme Court removed the exigent circumstances requirement in State v. Witt, 223 N.J. 409, 450 (2015), but did so only prospectively.

[Id. at 29.]

Here, the stop occurred after midnight. The FJ Cruiser contained multiple firearms and its occupants had just been shooting. Although four occupants had been secured by a number of officers, two other occupants "who kn[e]w the location of the car and could remove it or its contents" were at large. Ibid. The search also took place at a Wawa, where "passersby . . . could tamper with the car or its contents." Ibid. Further, it was unsafe to leave the FJ Cruiser unguarded, and to delay to obtain a warrant would place the officers and evidence at risk. Seeing the guns gave the officers probable cause, there were sufficient exigent circumstances to justify a search of the FJ Cruiser and the seizure of the firearms.

The State also contends the officers could have conducted a protective sweep of the FJ Cruiser to search for weapons because they had reasonable suspicion. See State v. Gamble, 218 N.J. 412, 426-33 (2014). We need not reach that issue because the officers had probable cause once they saw the firearms, and could properly seize them under the plain view and automobile exceptions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-4376-15T4