65 A.3d 865

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. DUSTIN S. REININGER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 22, 2013—Decided May 20, 2013.

522

Before Judges GRAVES, ESPINOSA, and GUADAGNO.

*Evan F. Nappen, P.C.,* attorneys for appellant (*Richard V. Gilbert,* on the brief).

*Jeffrey S. Chiesa,* Attorney General, attorney for respondent (*Jennifer E. Kmieciak,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

GRAVES, J.A.D.

A Hunterdon County grand jury charged defendant Dustin Reininger with second-degree unlawful possession of assault firearms, *N.J.S.A.* 2C:39-5(f) (count one); second-degree possession of handguns without a permit, *N.J.S.A.* 2C:39-5(b) (count two); third-degree unlawful possession of rifles, *N.J.S.A.* 2C:39-5(c) (count three); third-degree unlawful possession of shotguns, *N.J.S.A.* 2C:39-5(c) (count four); fourth-degree possession of hollow-nose bullets, *N.J.S.A.* 2C:39-3(f) (count five); fourth-degree possession of a large capacity ammunition magazine, *N.J.S.A.* 2C:39-3(j) (count six); third-degree hindering his own apprehension, *N.J.S.A.* 2C:29-3(b) (count seven); and fourth-degree obstruction of the administration of law, *N.J.S.A.* 2C:29-1 (count eight). Count eight was dismissed by the court prior to trial. Defendant was tried *in absentia*. The jury acquitted defendant of unlawful possession of assault firearms and handguns without a permit (counts one and two), but convicted him of the remaining charges.

On November 18, 2011, the court sentenced defendant as follows: on counts three and four, to five years imprisonment with a mandatory minimum three-year period of incarceration pursuant to the Graves Act, *N.J.S.A.* 2C:43-6(c); on counts five and six, to eighteen months imprisonment; and on count seven, to three years imprisonment. The court ordered the sentences to run concurrently. Therefore, defendant was sentenced to an aggregate five-year term of imprisonment with a three-year period of

parole ineligibility. Appropriate monetary penalties were also imposed, including reimbursement to Hunterdon County for the cost of defendant's extradition from Texas.

Defendant presents the following arguments on appeal:

*POINT I*

THE COURT BELOW ERRED IN FAILING TO DISMISS THE FIREARM CHARGES IN THE INDICTMENT EVEN THOUGH IT REALIZED THE CASE WAS INCORRECTLY PRESENTED TO THE GRAND JURY.

*POINT II*

THE COURT BELOW ERRED BY FAILING TO SUPPRESS EVIDENCE AND STATEMENTS GLEANED FROM THE UNLAWFUL DETENTION OF DEFENDANT AND THE WARRANTLESS, UNCONSENTED SEARCH OF HIS AUTOMOBILE.

*POINT III*

THE COURT BELOW ERRED BY CONDUCTING THE TRIAL IN DEFEN-DANT'S ABSENCE.

*POINT IV*

THE DEFENDANT WAS ERRONEOUSLY CONVICTED FOR POSSESSING LARGE CAPACITY AMMUNITION MAGAZINES BECAUSE THE STATE FAILED TO MEET THE ELEMENTS OF ITS CASE.

*POINT V*

DEFENDANT'S POSSESSION OF HOLLOW NOSE AMMUNITION WAS PROTECTED BY *N.J.S.A.* 2C:39-3(g)(2).

*POINT VI*

DEFENDANT'S CONVICTION FOR HINDERING SHOULD BE REVERSED BECAUSE IT WAS THE RESULT OF AN UNLAWFUL CONFESSION.

*POINT VII*

THE DEFENDANT'S POSSESSION OF HIS LAWFULLY ACQUIRED PROP-ERTY WAS PROTECTED UNDER THE SECOND AMENDMENT.

We have considered these arguments in light of the record and the applicable law and affirm.

## I.

At approximately 3:25 a.m. on March 20, 2009, Patrolman Gregory Wester of the Readington Township Police Department was on routine patrol when he observed a Toyota sport utility vehicle (SUV) with its lights off, parked behind a Wachovia Bank. As Wester pulled into the bank's parking lot to investigate, he turned on his overhead lights, which activated a mobile video

recorder on his dashboard.[1] After notifying the police dispatcher of his location, Wester approached the vehicle with a flashlight.

Wester noticed that the vehicle had Texas license plates and that an individual, later identified as defendant, was sleeping in the driver's seat under a blanket. Wester testified that when he woke defendant, he appeared "nervous and tired." According to Wester, defendant "had trouble maintaining eye contact" and when asked "a basic question he would think about it and stutter."

Defendant provided Wester with a Texas driver's license but could not produce the vehicle registration or proof of insurance. When Wester inquired about a Texas license plate on the floor near the center console that was different from the plates on the SUV, defendant said the plates on the vehicle had expired, and he had difficulty installing the current plates which were in the vehicle. Defendant also said he had been a police officer in Maine and had stopped to rest while traveling from Maine to Texas, but defendant was unable to produce any law enforcement identification.

Wester noticed several items "stacked" on the backseat of the SUV, and he asked if there was anything illegal in the vehicle. Defendant answered, "No." Wester also asked defendant if he was transporting any firearms, and defendant responded, "No, no, all good." At that point, Wester used his flashlight to illuminate the rear passenger compartment, and he saw two nylon firearm cases on the backseat of defendant's vehicle. Wester again asked if there were any firearms in the SUV, and defendant again answered, "No." Wester testified, "Once I saw the firearms I didn't say anything about it. I didn't want to alert him. I immediately radioed for backup."

When a backup officer arrived, Wester confronted defendant about the cases on the backseat of the vehicle. Wester said he

---

[1] We derive the facts from the video recording (which was shown to the jury), Wester's affidavit in support of a search warrant, grand jury testimony, pretrial motion hearings, and trial testimony.

saw "a case in there that looks very, very similar to what I have in my house for my long arm, so I'm going to ask you again [are] there any firearms in the car." This time, defendant admitted he had "long arms that [he was] moving to Texas," which were registered in Texas. Defendant was ordered out of the vehicle and patted down for weapons, but none were found.

After two more officers arrived, Wester asked for consent to search the vehicle. Defendant denied consent. Wester asked how many firearms were in the vehicle, and defendant answered, "Three shotguns [and] an AR-15." Wester also asked if there were any handguns in the SUV. Defendant said he was "not sure," even though he acknowledged he had packed the vehicle.

Wester then opened the back door of defendant's SUV and removed the two nylon cases. Wester testified he did so "for safety reasons" and to make sure the firearms were being "transported in a safe manner." As Wester was examining the cases, defendant told another officer there were "approximately twelve firearms" in the vehicle, including "a loaded Glock handgun" behind the driver's seat. Once defendant admitted there was a loaded handgun in his vehicle, he was charged with hindering his own apprehension, advised of his *Miranda*[2] rights, and hand-cuffed. Wester then returned the firearm cases to the vehicle, and it was towed to the Readington Township Police Department. Later that same morning, Wester applied for and obtained a search warrant.

A search of defendant's vehicle revealed twenty-one [3] firearms, including rifles, shotguns, and handguns. In addition, the police recovered hollow-nose bullets from the Glock handgun and a large capacity magazine.[4]

---

[2] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

[3] Because the record does not contain an inventory of the firearms that were seized, we rely on the jury verdict sheet which lists fourteen rifles, four shotguns, and three handguns.

[4] Pursuant to *N.J.S.A.* 2C:39-1(y), a "[l]arge capacity ammunition magazine" is defined as "a box, drum, tube or other container which is capable of holding

When Wester testified before the grand jury, he provided a summary of the firearms and other items recovered from defendant's vehicle. He also stated that defendant's SUV did not have a trunk, but rather a "rear compartment," and that defendant did not have a New Jersey permit to purchase or carry firearms or a New Jersey firearms purchaser ID card.

Wester explained that several of the rifles and shotguns were located on the backseat of defendant's vehicle and were stored in either nylon or cloth cases that closed with zippers or Velcro flaps, and none of the firearms were in locked containers. One of the grand jurors asked whether defendant would have been charged if the firearms were "locked in a box and separated." The prosecutor responded:

> No. There are actually some exceptions to the requirements.... Basically, if someone is moving ... from Residence A [to] Residence B, or transporting, say, for example, they just purchased it, so they can transport it to their home, if they are properly secured, locked in a trunk, locked in a special lockbox and unloaded, then that would most likely provide an exception to these requirements, and therefore a defense to being charged.

> So, that is a factor to consider how the weapons were contained and, again, whether they were loaded, whether they were in a lockbox.

The prosecutor also read the exemption for transporting firearms under *N.J.S.A.* 2C:39-6(g), which requires a firearm to "be carried unloaded and contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk of the automobile in which it is being transported."

Defendant filed three pretrial motions: a motion to dismiss the indictment, a motion to suppress evidence obtained with and without a search warrant, and a motion to suppress his statements to the police. Wester was the only witness to testify at the suppression hearing. Except for dismissing count eight of the indictment, which charged defendant with obstructing the administration of law, the court denied the motions on March 8, 2010.

---

more than 15 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm."

During a pretrial conference on April 16, 2010, the court informed defendant of his right to be present at trial and that the trial was scheduled for August 9, 2010. The court also informed defendant that if he failed to appear, the trial could proceed in his absence. Defendant stated that he understood. Nevertheless, defendant failed to appear for his trial, which began on August 9, 2010, and his attorney could not explain his absence.

The State presented testimony from Detective Donald Mundorff, a member of the New Jersey State Police Firearms Investigation Unit. He testified defendant had not applied for a New Jersey firearms ID card, pistol purchase permit, carrying permit, or a permit for an assault weapon. Mundorff conceded on cross-examination, however, that a Maine resident who purchased firearms in Maine would not be required to obtain New Jersey permits or firearms purchaser's ID cards to transport the firearms through New Jersey, so long as the firearms were transported in accordance with 18 *U.S.C.A* § 926A, which regulates the interstate transportation of firearms. 18 *U.S.C.A* § 926A provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: *Provided,* That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

In addition, the State called Wester and Detective Sergeant Ryan Neiber to document the location of the firearms and additional items recovered from defendant's SUV through digital photography. Wester testified the SUV did not have a trunk, and some rifles and shotguns were in unlocked nylon or vinyl cases on the backseat of defendant's vehicle. According to Wester, the rest of the rifles and shotguns were in "gun socks." Wester testified the gun socks had "an opening on one end with Velcro. Just open

the Velcro and you can slide the gun out of the gun sock." Wester also testified that the Glock handgun, recovered from behind the driver's seat, was loaded with hollow-nose bullets.

The State's final witness, Detective Gary Mayer, a ballistics expert with the Somerset County Prosecutor's Office, was responsible for determining whether the firearms were operable. Except for one shotgun that was broken, Mayer examined and test-fired each of the firearms and found them to be operational. Mayer also testified that an ammunition magazine recovered from the vehicle, which held approximately thirty bullets, was compatible with two of the semi-automatic weapons he tested.

Defendant did not present any witnesses. Defense counsel emphasized in his opening and closing statements that defendant was in the process of traveling from his "old residence in Maine" to his "new residence in Texas," and that it was lawful for defendant to transport his firearms from "one residence [to] another residence while moving." Defendant's attorney also argued that some of the firearms cases had zippers that were "closed and fastened" and the cases that did not have zippers were not "any less worthy." Therefore, defendant "was within the exemptions of the federal law." In response, the State stressed that the Glock handgun was loaded, none of the firearms were in locked containers, and the firearms on the backseat of defendant's vehicle were readily accessible from the driver's seat.

The court instructed the jury to consider both state and federal laws regulating the transportation of firearms. The jury was instructed that defendant had a defense under New Jersey law, *N.J.S.A.* 2C:39-6(g), if: (1) he was "carrying or transporting" the firearms "from one residence to another or between his residence and place of business"; (2) "the firearms being transported were carried unloaded"; and (3) "the firearms were contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk" of defendant's vehicle. The jury was told to "consider the evidence as it pertained to each firearm" in determining whether the defense applied.

The jury was further instructed that defendant had a defense under federal law if he was transporting the firearms, including any assault firearms, "from one residence where he may lawfully possess and carry" the firearms "to any other place where he may lawfully possess and carry" the firearms; the firearms "being transported were carried unloaded"; and neither the firearms nor any ammunition were "readily accessible" or "directly accessible" from the passenger compartment of the vehicle.

The jury returned its verdict on August 13, 2010. Defendant was subsequently apprehended and extradited from Texas to New Jersey.

## II.

In his first point, defendant argues the trial court erred in denying his motion to dismiss the indictment. Defendant primarily claims the indictment is defective because the prosecutor failed to instruct the grand jury on 18 *U.S.C.A.* § 926A. The trial court rejected this argument and so do we.

The purpose of the grand jury is to "determine whether the State has established a prima facie case that a crime has been committed and that the accused has committed it." *State v. Hogan*, 144 *N.J.* 216, 227, 676 *A.*2d 533 (1996). The grand jury "is an accusative rather than an adjudicative body," and requiring it "to weigh inculpatory and exculpatory evidence would alter the grand jury's historical role." *Id.* at 229-30, 676 *A.*2d 533. Accordingly, a prosecutor's duty to present exculpatory evidence "arises only if the evidence satisfies two requirements: it must directly negate guilt and must also be clearly exculpatory." *Id.* at 237, 676 *A.*2d 533. In this case, defendant's SUV did not have a trunk. Therefore, the exemption under the federal statute, 18 *U.S.C.A.* § 926A, only applied if defendant's firearms were stored "in a locked container other than the glove compartment or console" of his vehicle. In addition, the federal exemption did not apply because the firearms in the unlocked gun cases on the backseat of the SUV and the loaded handgun behind the driver's

seat were "directly accessible" to defendant. Thus, the prosecutor did not improperly interfere with the grand jury's decision-making process by failing to explain the federal exemption available to interstate travelers, and the trial court's refusal to dismiss the indictment was not an abuse of discretion.

In his second point, defendant contends the trial court erred in denying his motion to suppress evidence obtained with and without a search warrant and statements made prior to his arrest. Defendant argues it was unreasonable for Wester to seize the two firearm cases without a warrant, because "he did not have probable cause to believe any law was being violated" or "exigent circumstances to justify the search." Defendant also claims the "initial unlawful search" led to his admission that there was a loaded handgun behind the driver's seat, "which, in turn, was used to justify the search warrant." Therefore, defendant contends that "all statements and physical evidence found should be suppressed." We do not agree.

■■■■ "[T]he Fourth Amendment of the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution protect citizens against unreasonable police searches and seizures by requiring warrants issued upon probable cause 'unless [the search] falls within one of the few well-delineated exceptions to the warrant requirement.'" *State v. Johnson*, 171 *N.J.* 192, 205, 793 *A.*2d 619 (2002) (quoting *State v. Maryland*, 167 *N.J.* 471, 482, 771 *A.*2d 1220 (2001)). These exceptions "include, among others, plain view, consent, community caretaking, search incident to arrest, and the automobile exception." *State v. Pena–Flores*, 198 *N.J.* 6, 18, 965 *A.*2d 114 (2009). " 'In analyzing the validity of warrantless searches, the strands of constitutional exceptions to the Fourth Amendment must be kept untangled.'" *Johnson, supra*, 171 *N.J.* at 205, 793 *A.*2d 619 (quoting *State v. Welsh*, 84 *N.J.* 346, 354, 419 *A.*2d 1123 (1980)).

■■■■ " '[T]he touchstone of the Fourth Amendment is reasonableness,'" and the reasonableness of a search or seizure is determined " 'by assessing, on the one hand, the degree to which

it intrudes on an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *State v. Davila*, 203 *N.J.* 97, 111, 999 *A.2d* 1116 (2010) (quoting *United States v. Knights*, 534 *U.S.* 112, 118–19, 122 *S.Ct.* 587, 591, 151 *L.Ed.2d* 497, 505 (2001)). "The main test always remains whether the law enforcement officer has acted in an objectively reasonable manner." *State v. Jones*, 143 *N.J.* 4, 19–20, 667 *A.2d* 1043 (1995). "The State bears the burden of proving by a preponderance of the evidence the validity" of a search executed without a warrant. *State v. Edmonds*, 211 *N.J.* 117, 128, 47 *A.3d* 737 (2012).

As the Court has stated, "[a] field inquiry 'is a limited form of police investigation that, except for impermissible reasons such as race, may be conducted without grounds for suspicion'" and does not violate the Fourth Amendment. *State v. Nishina*, 175 *N.J.* 502, 510, 816 *A.2d* 153 (2003) (quoting *State v. Rodriguez*, 172 *N.J.* 117, 126, 796 *A.2d* 857 (2002)). "[A]n investigative detention (sometimes called an investigatory stop or a *Terry*[5] stop)" is "more intrusive than a field inquiry." *Nishina, supra*, 175 *N.J.* at 510, 816 *A.2d* 153. An investigative detention is valid when "'specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity.'" *State v. Pineiro*, 181 *N.J.* 13, 20, 853 *A.2d* 887 (2004) (quoting *Nishina, supra*, 175 *N.J.* at 511, 816 *A.2d* 153). However, "an investigative stop becomes a *de facto* arrest when 'the officers' conduct is more intrusive than necessary for an investigative stop.'" *State v. Dickey*, 152 *N.J.* 468, 478, 706 *A.2d* 180 (1998) (quoting *United States v. Jones*, 759 *F.2d* 633, 636 (8th Cir.), *cert. denied*, 474 *U.S.* 837, 106 *S.Ct.* 113, 88 *L.Ed.2d* 92 (1985)). The third type of police-citizen encounter is an arrest, which must be supported by probable cause. *Pineiro, supra*, 181 *N.J.* at 21, 853 *A.2d* 887.

---

[5] *Terry v. Ohio*, 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.2d* 889 (1968).

In the present matter, defendant does not challenge the initial field inquiry. When an initial detention is justified, "the question becomes whether the ensuing investigation is 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *State v. Baum*, 393 *N.J.Super.* 275, 286, 923 *A.*2d 276 (App.Div.2007) (quoting *Terry, supra*, 392 *U.S.* at 20, 88 *S.Ct.* at 1879, 20 *L.Ed.*2d at 905), *aff'd in part and modified in part*, 199 *N.J.* 407, 972 *A.*2d 1127 (2009). The Court has also recognized that when "the circumstances 'give rise to suspicions unrelated to the [initial detention], an officer may broaden [the] inquiry and satisfy those suspicions.'" *Dickey, supra*, 152 *N.J.* at 479–80, 706 *A.*2d 180 (second alteration in original) (quoting *United States v. Johnson*, 58 *F.*3d 356, 357–58 (8th Cir.), *cert. denied*, 516 *U.S.* 936, 116 *S.Ct.* 348, 133 *L.Ed.*2d 245 (1995)); *see also Baum, supra*, 393 *N.J.Super.* at 287, 923 *A.*2d 276 (noting that "inconsistent stories, inability to name the owner of the car, the lack of a driver's license, and [the driver's] nervousness supported a reasonable extension of the original detention beyond the activity justifying the initial stop"). For similar reasons, there was sufficient justification for further investigation in this case.

 In addition, as this court has noted, "[a] simple observation into the interior of an automobile by a police officer located outside the automobile is not a 'search' within the meaning of the Fourth Amendment." *State v. Foley*, 218 *N.J.Super.* 210, 215, 527 *A.*2d 482 (App.Div.1987) (citing *Texas v. Brown*, 460 *U.S.* 730, 739–40, 103 *S.Ct.* 1535, 1541–42, 75 *L.Ed.*2d 502, 513 (1983)). "There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Brown, supra*, 460 *U.S.* at 740, 103 *S.Ct.* at 1542, 75 *L.Ed.*2d at 513 (internal citation omitted). It is equally well-settled that Wester's use of a flashlight to illuminate the firearm cases on the rear seat of the SUV did " 'not transform an otherwise reasonable observation into an unreasonable search within the meaning of the Fourth Amendment.'" *Johnson, supra*, 171 *N.J.* at 210, 793 *A.*2d 619

(quoting *State v. Gibson,* 318 *N.J.Super.* 1, 11, 722 *A.*2d 960 (App.Div.1999)).

Based on the outward appearance of the nylon cases, Wester reasonably believed they contained rifles or shotguns that were easily accessible to defendant. *See State v. Demeter,* 124 *N.J.* 374, 381, 590 *A.*2d 1179 (1991) (noting that some containers "may by their configuration or design proclaim their contents to an observer"). Moreover, when Wester questioned defendant about the nylon cases, defendant confirmed he had long arms that he was transporting to Texas.

Because defendant "repeatedly denied having guns in the vehicle, even though the firearm cases were in plain view on the rear seat," the trial court concluded the warrantless seizure of the two firearms cases was objectively reasonable "for the safety of the officer." *See State v. Roach,* 172 *N.J.* 19, 29, 796 *A.*2d 214 (2002) (noting a warrantless seizure was valid when the "totality of the circumstances" created an "objectively reasonable concern for the officers' safety"); *Michigan v. Long,* 463 *U.S.* 1032, 1049, 103 *S.Ct.* 3469, 3481, 77 *L.Ed.*2d 1201, 1220 (1983) (permitting police to conduct a weapons search of the interior of a car when they have a reasonable belief that the driver is potentially dangerous); *see also State v. Lund,* 119 *N.J.* 35, 48, 573 *A.*2d 1376 (1990) (adopting *Long* as "sound and compelling precedent [that] should be followed to protect New Jersey's police community"). In our view, however, the warrantless seizure was not necessary for the officers' safety, because defendant had been removed from the vehicle and there were multiple backup officers at the scene.

Nevertheless, we conclude the limited seizure was valid under the plain view exception to the search warrant requirement. The rationale for the plain view doctrine is that "a police officer lawfully in the viewing area" need not "close his eyes to suspicious evidence in plain view." *State v. Bruzzese,* 94 *N.J.* 210, 237, 463 *A.*2d 320 (1983), *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984). To satisfy this exception: (1) "the police officer must be lawfully in the viewing area"; (2) "the

officer has to discover the evidence 'inadvertently,' meaning that he did not know in advance where evidence was located nor intend beforehand to seize it"; and (3) "it has to be 'immediately apparent' to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure." *Id.* at 236, 463 *A.*2d 320 (quoting *Coolidge v. New Hampshire,* 403 *U.S.* 443, 466, 91 *S.Ct.* 2022, 2038, 29 *L.Ed.*2d 564, 583 (1971)).

The *Bruzzese* Court clarified the third requirement "to mean that in order to seize evidence in plain view a police officer must have 'probable cause to associate the [item] with criminal activity.'" *Id.* at 237, 463 *A.*2d 320 (quoting *Brown, supra,* 460 *U.S.* at 741–42, 103 *S.Ct.* at 1543, 75 *L.Ed.*2d at 513). "All the officer needs to meet the third requirement is '[a] 'practical, nontechnical' probability that incriminating evidence is involved.'" *Ibid.* (alteration in original) (quoting *Brown, supra,* 460 *U.S.* at 742, 103 *S.Ct.* at 1543, 75 *L.Ed.*2d at 514). "In determining whether the officer has probable cause to associate the item with criminal activity, the court looks to what the police officer reasonably knew at the time of the seizure." *Ibid.; see also State v. Mann,* 203 *N.J.* 328, 341, 2 *A.*3d 379 (2010) (finding the plain view exception was satisfied when an officer "was lawfully in the viewing area" and "had probable cause to associate [a] bag of suspected drugs with criminal activity").

It is clear that the plain view exception to the warrant requirement applies in this case. First, Wester was lawfully conducting a field inquiry while standing outside defendant's SUV when he observed the firearm cases. Second, Wester did not possess advance knowledge that firearms would be present in the vehicle. Third, based on defendant's initial denials that there were firearms in his vehicle, Wester's plain view discovery of firearm cases on the back seat, and defendant's subsequent admission that he was transporting long arms to Texas, Wester had probable cause to believe that defendant possessed firearms in violation of the law.

Because the seizure of the firearm cases was proper under the plain view doctrine, it was not necessary for the State to establish exigent circumstances under the automobile exception. *See Pena–Flores, supra,* 198 *N.J.* at 32, 965 *A.*2d 114 ("As we have said, in order for the automobile exception to come into play, exigency was required.").

The trial court also found that defendant's statements to the police at the scene prior to his arrest were admissible, because they were made "freely and voluntarily" and "were not the result of custodial police interrogation." The warnings under *Miranda* are required in a custodial situation prior to conducting an interrogation. *Berkemer v. McCarty,* 468 *U.S.* 420, 428–429, 104 *S.Ct.* 3138, 3144, 82 *L.Ed.*2d 317, 327 (1984). Determining whether a suspect is in custody depends on "whether there has been a significant deprivation of the suspect's freedom of action based on the objective circumstances, including the time and place of the interrogation, the status of the interrogator, the status of the suspect, and other such factors." *State v. P.Z.,* 152 *N.J.* 86, 103, 703 *A.*2d 901 (1997). Custodial interrogations do not include general on-the-scene questions. *Miranda, supra,* 384 *U.S.* at 477, 86 *S.Ct.* at 1629, 16 *L.Ed.*2d at 725; *State v. Gosser,* 50 *N.J.* 438, 445–46, 236 *A.*2d 377 (1967), *cert. denied,* 390 *U.S.* 1035, 88 *S.Ct.* 1434, 20 *L.Ed.*2d 295 (1968).

Here, during Wester's lawful seizure of the firearm cases, defendant was neither handcuffed nor secured in a police vehicle, and the video recording confirms defendant was not pressured or coerced into making any incriminating statements. We therefore conclude the court properly denied defendant's motion to suppress the statements he made to the police prior to his arrest.

The trial court also determined Wester's affidavit in support of a search warrant set forth sufficient probable cause "to establish there were illegal weapons in the defendant's vehicle." Accordingly, the court denied defendant's motion to suppress the evidence seized during the execution of the warrant. "[A] search executed pursuant to a warrant is presumed to be valid and . . . a

defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" *State v. Jones,* 179 *N.J.* 377, 388, 846 *A.*2d 569 (2004) (quoting *State v. Valencia,* 93 *N.J.* 126, 133, 459 *A.*2d 1149 (1983)). In this case, the trial court correctly concluded there was sufficient probable cause to justify the warrant, and defendant's suppression motion was properly denied.

■ In his third point, defendant claims the court erred by proceeding with the trial in his absence. However, defendant had actual notice of his scheduled trial date and the consequences of failing to appear, and he did not present a valid reason for failing to attend the trial. Under these circumstances, defendant effectively waived his right of presence. *See R.* 3:16(b); *see also State v. Finklea,* 147 *N.J.* 211, 213, 686 *A.*2d 322 (1996) ("[O]nce a defendant has been given actual notice of a scheduled trial date, nonappearance on the scheduled or adjourned trial date is deemed a waiver of the right to be present during the trial absent a showing of justification by the defendant."), *cert. denied,* 522 *U.S.* 837, 118 *S.Ct.* 110, 139 *L.Ed.*2d 63 (1997).

■ In his fourth point defendant argues, for the first time, there was insufficient evidence to support his conviction for possession of a large capacity magazine. This claim is procedurally barred because defendant failed to move for a new trial based on that ground as required by *Rule* 2:10-1. *See State v. DiFerdinando,* 345 *N.J.Super.* 382, 399, 785 *A.*2d 440 (App.Div.2001), *certif. denied,* 171 *N.J.* 338, 793 *A.*2d 717 (2002). In any event, this argument lacks merit. There was strong evidence to support the jury's finding that defendant possessed a large capacity magazine that was compatible and operable with a semi-automatic weapon. Furthermore, the testimony of Mayer established that the magazine was capable of "continuously and directly" feeding more than fifteen rounds of ammunition into a semi-automatic firearm as required by *N.J.S.A.* 2C:39-1(y).

In his next argument, defendant asserts his possession of hollow-nose bullets was protected by the exemption under *N.J.S.A.* 2C:39–3(g)(2). *N.J.S.A.* 2C:39–3(g)(2) provides that a person may possess hollow-nose bullets in his dwelling or carry the ammunition "from the place of purchase to said dwelling." However, under the plain and unambiguous language of the statute, defendant was not carrying the ammunition from its "place of purchase" to his dwelling. Thus, defendant's possession of the hollow-nose bullets was not protected by *N.J.S.A.* 2C:39–3(g)(2).

Defendant argues in his sixth point that his "conviction for hindering should be reversed because it was the result of an unlawful confession" that "flowed from the illegal search." Because Wester's seizure of the two firearm cases was not unlawful, and defendant was not subject to custodial interrogation, this argument is clearly without merit and does not warrant further discussion. *R.* 2:11–3(e)(2).

In his final argument, defendant claims his convictions should be reversed because "New Jersey's gun control scheme" violates his right under the Second Amendment of the United States Constitution to keep and bear arms. We disagree. The Second Amendment does not create "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 *U.S.* 570, 626, 128 *S.Ct.* 2783, 2816, 171 *L.Ed.*2d 637, 678 (2008). Furthermore, the Second Amendment does not preclude the State from regulating the manner in which firearms and related accessories must be transported. *See e.g. State v. Hatch*, 64 *N.J.* 179, 188–89, 313 *A.*2d 797 (1973) (applying New Jersey's statutory requirements to a Massachusetts resident driving through New Jersey on his way to Pennsylvania).

Affirmed.