# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5321-17T1

STATE OF NEW JERSEY IN
THE INTEREST OF N.S.,
a Juvenile.

Submitted February 25, 2020 – Decided March 10, 2020

Before Judges Gilson and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FJ-20-0416-18.

Joseph E. Krakora, Public Defender, attorney for appellant N.S. (Frank M. Gennaro, Designated Counsel, on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent State of New Jersey (Timothy Mark Ortolani, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

N.S., a juvenile, appeals her adjudications of delinquency for acts which,

if committed by an adult, would have constituted the offenses of third-degree

possession of oxycodone, a controlled dangerous substance (CDS), and possession of less than fifty grams of marijuana, a disorderly persons offense. The Family Part judge sentenced N.S. to a probationary term of eighteen months, community service, and mandatory fines and penalties.

The sole issue on this appeal is whether the trial judge erred in granting the State's motion to admit N.S.'s statements following an evidentiary hearing. More specifically, N.S. claims "she was subjected to a custodial interrogation," raising one point for our consideration:

> THE STATEMENTS MADE BY N.S. SHOULD HAVE BEEN SUPPRESSED BECAUSE THE POLICE FAILED TO CONSIDER HER JUVENILE STATUS, AND FAILED TO PROPERLY ADMINISTER THE MIRANDA WARNINGS[1] AND BECAUSE THE STATE FAILED TO PROVE THAT N.S. MADE A KNOWING, INTELLIGENT, VOLUNTARY WAIVER OF HER RIGHTS.

Because we conclude police omitted a critical right when advising N.S. of her Miranda rights, we vacate the order granting admission of her statements and remand the matter to the trial court for further proceedings, thereby rendering moot N.S.'s claim that she did not voluntarily waive her rights.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966). N.S. did not raise before the trial judge that police omitted one of the Miranda warnings.

# I.

At the hearing, the State presented the testimony of two Roselle Park police officers: Alexander Lanza, who administered the <u>Miranda</u> warnings to N.S.; and John Fitzgerald, who subsequently questioned N.S. The State moved into evidence the video recording of the roadside encounter from Lanza's body cam.[2] N.S. did not testify or present any evidence.

At about 3:00 a.m. on August 20, 2017, Fitzgerald stopped a car for a traffic violation. N.S. – then seventeen and a half years old – was seated in the back of the vehicle; a male passenger was seated in the front. Relevant here, the driver told Fitzgerald both passengers were juveniles. Fitzgerald asked the occupants "multiple times" to disclose their ages, but "[n]obody said an age."

After detecting the odor of alcohol emanating from the vehicle, Fitzgerald ordered the driver out of the car, performed field sobriety tests, and ultimately arrested her for driving while intoxicated. By that time, Lanza and another officer had arrived as backup. At the driver's request, Fitzgerald permitted her to return to the car to speak with the front seat passenger, whom the driver

---

[2] Neither party moved to admit the transcript of Lanza's body-cam video, or the video recording from Fitzgerald's body cam and its accompanying transcript. But, both transcripts were provided to the judge prior to the hearing and he considered them when rendering his decision.

claimed was her brother.[3] Fitzgerald cut short the encounter when the driver became "belligerent . . . yelling at [both] occupants to get everything out of the car."

When the passenger door was opened, Fitzgerald detected the odor of marijuana. N.S. and the other passenger were ordered out of the car. Fitzgerald instructed N.S. to place the purse she was holding back inside the car because "[a]t th[at] time, it was a narcotics investigation," and the purse was "to be searched for narcotics" and "any weapons" that N.S. "could [have] use[d] to harm [the officers] or somebody else." N.S. complied and stood next to Fitzgerald's patrol car as instructed. Because Lanza then "observed some marijuana" near the driver's seat, he advised N.S. of her <u>Miranda</u> rights. After Lanza advised N.S. had the right to remain silent, N.S. interrupted Lanza and asked whether she was being arrested. Lanza responded that police "didn't know . . . if anybody was being placed under arrest at that time. . . . [They] were just conducting an investigation."

Lanza testified as to his recollection of the warnings he administered to N.S., stating: "[S]he had the right to remain silent. Anything that she [sic] could

---

[3] Police later determined the front-seat passenger was neither the driver's brother nor a juvenile.

A-5321-17T1

be held against her in a court of law. That she had the right to have an attorney present . . . during any questioning. <u>And that she was able to stop questioning at any time</u>."[4] (Emphasis added). But, Lanza's body-cam video revealed the officer did not advise N.S. that she could cease police inquiry.

Lanza asked N.S. whether she understood her rights, but he did not ask whether she waived her right to remain silent. Lanza did not question N.S. about any contraband found in the car. Instead, they discussed N.S.'s concerns about removing her "stuff" from the car and how she would get home. Lanza told N.S. he was not sure what the "outcome" would be and instructed her to sit on the curb. Lanza testified he administered <u>Miranda</u> warnings "just to err on the side of caution." On cross-examination he clarified: "Because CDS was seen in plain view" he "just wanted to make sure that if [he] passed her along to [the other officers] who were conducting the CDS investigation, that she was advised." Lanza and Fitzgerald both testified none of the occupants was free to leave during the motor vehicle stop.

---

[4] During cross-examination, Lanza acknowledged he administered the warnings from memory. Defense counsel complimented Lanza for doing so without utilizing a <u>Miranda</u> card and made no inquiry about the sufficiency of the warnings.

In the meantime, Fitzgerald apparently searched the purse and found "a pill bottle with weed[] and pills."[5] Fitzgerald then asked N.S., who was standing uncuffed next to his patrol car, whether the purse and its contents belonged to her. N.S. acknowledged she owned the purse, but said she "just started throwing everything in [t]here." Fitzgerald had overheard Lanza administer the warnings to N.S., but Fitzgerald did not confirm – with Lanza or N.S. – that she had waived her rights before questioning her. Fitzgerald's inquiry occurred about twenty minutes after he initially stopped the vehicle.

Following summations, the trial judge issued an oral decision, granting the State's motion to admit N.S.'s statements at trial. The judge found N.S. was "detained at [the] time" but "[s]he was not in custody" when she provided her statements. Rather, N.S. "was questioned at the traffic stop . . . to find out basic information." Further, "all the questions only pertain[ed] to the purse and its . . . contents." According to the judge, "even if [N.S.] was in custody, she was read her <u>Miranda</u> rights and she clearly and voluntarily [and] knowingly waived

---

[5] Fitzgerald searched the purse before ascertaining the owner. <u>Cf.</u> <u>State v. Suazo</u>, 133 N.J. 315, 322 (1993) (recognizing police should determine which occupants of a vehicle own bags found therein before obtaining consent from the driver to search the bags). N.S. did not move to suppress any evidence seized from the car, and that issue is not before us. We therefore express no opinion regarding the validity of the search.

her Miranda rights [as] shown on the body cam." The court concluded that "the totality of the circumstances . . . makes it clear [N.S.] did not need a parent present while making these statements" and N.S.'s "waiver of her Miranda rights was completely voluntary."

## II.

We deferentially review a trial court's factual findings regarding a defendant's waiver of his or her right to remain silent. See State v. Tillery, 238 N.J. 293, 314 (2019). Those findings should be disturbed only if they are "so clearly mistaken that the interests of justice demand intervention and correction." Ibid. (internal quotation marks omitted). Legal conclusions, however, are reviewed de novo. Ibid.

Because Lanza administered Miranda warnings to N.S., we briefly review the trial judge's initial determination that warnings were not necessary. In doing so, we agree with the judge that brief roadside questioning of a motorist during a traffic stop ordinarily is not considered custodial interrogation and, as such, does not require administration of Miranda warnings. See, e.g., Berkemer v. McCarthy, 468 U.S. 420, 439-40 (1984) (recognizing questioning during the course of a brief routine traffic stop – unlike a police station interrogation – is not sufficiently coercive to implicate the necessity of Miranda warnings). Our

state courts have adhered to the <u>Berkemer</u> reasoning in determining whether there is a need to administer <u>Miranda</u> warnings during the course of a routine traffic stop. <u>See, e.g.</u>, <u>State v. Reininger</u>, 430 N.J. Super. 517, 537 (App. Div. 2013); <u>see also</u> <u>State v. Hickman</u>, 335 N.J. Super. 623, 631 (App. Div. 2000) ("Roadside questioning of a motorist is not transformed into 'custodial interrogation' that must be preceded by <u>Miranda</u> warnings simply because a police officer's questioning is accusatory in nature or designed to elicit incriminating evidence.").

Unlike the defendants in <u>Berkemer</u>, <u>Reininger</u>, and <u>Hickman</u>, however, N.S. was administered her rights <u>after</u> Lanza observed marijuana in the vehicle. As Lanza candidly acknowledged, he "wanted to make sure that if [he] passed [N.S.] along to [the other officers] who were conducting the CDS investigation, that she was advised" of her rights. Indeed, Lanza and Fitzgerald both acknowledged the motor vehicle stop escalated to a narcotics investigation when they observed potential CDS in plain view. Although Fitzgerald's questioning of N.S. was limited in scope and duration, he conducted the inquiry after CDS was found in the car and the questions he asked were designed to elicit inculpatory statements.

We therefore disagree with the trial judge that the questions about the purse and its contents were designed to determine "basic information." Because N.S. was a suspect of that investigation, <u>Miranda</u> warnings were a necessary requirement prior to any questioning about the drugs found in the vehicle. <u>Cf.</u> <u>State v. Timmendequas</u>, 161 N.J. 515, 614-15 (1999) ("If the questioning is simply part of an investigation and is not targeted at the individual because she or he is a suspect, the rights provided by <u>Miranda</u> are not implicated."). In sum, N.S. was not free to leave, and the police inquiry exceeded ministerial questioning. Accordingly, for all intents and purposes, N.S. was in custody and <u>Miranda</u> warnings were required.

Nonetheless, under the circumstances of this case, it was not necessary for police to administer the warnings to N.S. in the presence of a parent. Although we are mindful that our Supreme Court has recently reaffirmed the requirement that police make a reasonable effort to have a parent or guardian present during the administration of <u>Miranda</u> rights to juveniles, <u>State in Interest of A.A.</u>, ___ N.J. ___, ___ (2020) (slip op. at 22), N.S. failed to respond to Fitzgerald's request to produce her identification or advise him of her age. And, as the judge correctly noted, the driver told Fitzgerald both passengers were juveniles, but police later learned at the scene that the male passenger was an adult. Further,

N.S. was six months shy of her eighteenth birthday when she was arrested. According to the judge, who observed Lanza's interactions with N.S. on the body-cam video, she "understood her rights and presented no indication she needed the presence of her parents or guardian before speaking" to police. We therefore discern no impropriety in questioning N.S. at the roadside stop without a parent or guardian present.

We next turn to N.S.'s argument that police failed to properly administer the <u>Miranda</u> warnings. In particular, she claims Lanza omitted the "fifth warning," that she could exercise her rights at any time during the interrogation. Because N.S. did not argue before the trial judge that Lanza omitted a critical right, we view her arguments on this contention through the prism of the plain error standard.[6] <u>R.</u> 2:10-2. Under that standard, "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." <u>Ibid.</u>; <u>see also</u> <u>State v. Bey</u>, 112 N.J. 45, 63 (1988) (applying the plain error standard where the defendant objected to the admissibility of his inculpatory statement for the first time on

---

[6] In its responding brief, the State neither addresses N.S.'s failure to raise the impropriety of the administration of her <u>Miranda</u> rights before the trial judge, nor argues that the failure is inconsequential. Instead, the State maintains the trial judge correctly concluded N.S. voluntarily waived her rights.

appeal). When applying the plain error doctrine to evidence that should have been excluded, "the error will be disregarded unless a reasonable doubt has been raised whether the [factfinder] came to a result that it otherwise might not have reached." State v. R.K., 220 N.J. 444, 456 (2015).

During custodial interrogation, a suspect must be advised of the following panoply of rights: (1) the right to remain silent; (2) that any statements made may be used against her in a court of law; (3) the right to counsel during questioning; (4) the appointment of counsel if she cannot afford an attorney; and (5) the ability to assert those rights at any point during the interrogation. See Tillery, 238 N.J. at 315 (citing Miranda, 384 U.S. at 479). Recently, we observed the failure to give complete warnings may constitute a violation that warrants suppression of the statement. See State v. Hager, ___ N.J. Super. ___, ___ (App. Div. 2020) (slip op. at 13).

In Hager, police arrested defendant in his apartment, following a report that he had threatened to shoot his landlord's son. Id. at 4. While in the patrol vehicle, police began administering Miranda warnings, but the defendant repeatedly interrupted the officer, who was unable to complete the warnings. Id. at 4-7. Accordingly, the officer did not advise the defendant that "if he could not afford an attorney, one would be provided to him." Id. at 7. Disagreeing

with the trial judge, we concluded the substance of the defendant's <u>Miranda</u> rights was not conveyed, warranting exclusion of the defendant's statements at trial. <u>Id.</u> at 11-12. In doing so, we recognized "omission of a right has never been countenanced in our courts." <u>Id.</u> at 11.

Here, Lanza failed to advise N.S. she had the right to assert her privilege and remain silent at any point during the questioning. Although Fitzgerald's questioning was brief, it occurred after Lanza had administered the warnings, advised N.S. she was not arrested, and engaged in an innocuous conversation with her. Although we recognize "<u>Miranda</u> has become embedded in routine police practice to the point where the warnings have become part of our national culture[,]" <u>Dickerson v. United States</u>, 530 U.S. 428, 443 (2000), N.S. had never before been arrested[7] and, as such, she was not personally familiar with the warnings. By omitting the fifth warning, police did not "adequately convey[] the substance of the warnings." <u>Hager</u>, slip op. at 2.

We therefore conclude the <u>Miranda</u> requirements were not satisfied here. We hasten to add, we mean no criticism of the trial judge, who was not presented

---

[7] Prior to testimony, defense counsel asked the trial judge to take judicial notice of N.S.'s lack of prior arrests. <u>See</u> N.J.R.E. 201(b)(4). The judge did not formally rule on that application, but he analogized N.S.'s circumstances to those of the juvenile in <u>State v. Presha</u>, 163 N.J. 304, 315 (2000), recognizing the significance of a juvenile's "previous encounters with the law."

with N.S.'s newly-minted challenge to the propriety of the <u>Miranda</u> warnings. Nonetheless, because admission of N.S.'s statements was "clearly capable of producing an unjust result," <u>R.</u> 2:10-2, they should have been excluded at trial.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION