**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2837-25

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

QUADIR SNELL,

    Defendant-Respondent.

_____

Argued June 1, 2026 – Decided June 22, 2026

Before Judges Sabatino and Walcott-Henderson.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 24-10-2047 and 24-10-2048.

Hannah Kurt, Assistant Prosecutor, argued the cause for appellant (Theodore N. Stephens, II, Essex County Prosecutor, attorney; Hannah Kurt, of counsel and on the briefs).

Rachel A. Neckes, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Rachel A. Neckes, of counsel and on the brief).

PER CURIAM

On leave granted, the State appeals the trial court's February 12, 2025, order granting defendant Quadir Snell's motion to suppress a gun that police officers seized without a warrant from the back seat floor of his parked car. For the reasons that follow, we affirm.

I.

The following relevant facts appear in the motion record.

On July 26, 2024, at 1:32 a.m., a Newark resident, who happened to be an off-duty police officer, observed a car parked on the side of the street with the engine still running. The observer noted defendant appeared to be asleep in the driver's seat. Defendant was sprawled across the driver's side in such a way that his left leg was extended out through the open window, and his right leg was bent with his knee leaning against the horn, creating a disturbance. The off-duty officer had been awakened by this noise and called the police.

Body worn camera ("BWC") footage from an arresting officer shows that police approached the car and shined a flashlight in defendant's face. There is no audio during this portion of the recording, so it is unclear whether police verbally attempted to rouse defendant at that moment. Additionally, it is unclear from the record whether the off-duty officer had made any unsuccessful attempts

2

to rouse defendant. After defendant did not respond to the flashlight shining, the officer with the body camera stuck his hand through the car's open window and illuminated the back passenger compartment of the car with his flashlight. Although the camera does not depict the same view as the officer, he seemingly spotted something on the floor of the car. At this moment, the officer activated the audio of his BWC and informed the other officers he saw a "firearm." After attempting to open several of the car's doors, the officer successfully opened the driver's side rear door and removed a handgun from the floor underneath the driver's seat. Aside from shining the light from the flashlight in defendant's face, no officers verbally addressed defendant or attempted to rouse him at this point.

After removing the gun from the car, the officer with the BWC stated, "[l]et's get him out the car alright" and opened the driver's side door. This action moved defendant's foot and woke him up. The officer asked defendant if he was alright and said the police were trying to "help him."

Defendant was removed from the car and the police handcuffed him and searched his person. He was not aggressive while being detained but was evidently groggy and incoherent.

A-2837-25

Defendant was placed in the back of a police car and informed he was under arrest for driving under the influence ("DUI"). The police examined the handgun at the scene and observed that it was loaded with hollow nose bullets. Additionally, police discovered a bottle of Hennessey liquor in defendant's car. Defendant denied drinking and any knowledge of the handgun.

Defendant was indicted for second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b) and fourth-degree unlawful possession of hollow point bullets, N.J.S.A. 2C:39-3(f). Because he had been previously convicted of conspiracy to commit aggravated assault, he was also indicted for second-degree possession of a firearm by a convicted felon, N.J.S.A. 2C:39-7(b) and first-degree possession of a firearm by a felon convicted of a No Early Release Act[1] offense, N.J.S.A. 2C:39-5(j).[2]

Defendant filed a motion to suppress the handgun. Oral argument was heard on the motion on January 6, 2026.[3] The State argued that police had lawfully searched defendant's car as part of their community caretaking

---

[1] N.J.S.A. 2C:43-7.2

[2] The DUI, if it was charged at all, is not pertinent to our analysis.

[3] The parties elected not to present testimony of any witnesses. However, the motion judge was provided with the BWC and various other exhibits.

4

function, and after the handgun was "observed in plain view," they were authorized to remove it "for the safety of defendant himself" as well as the safety of the police.

The motion judge questioned the State's reliance on the community caretaking doctrine since the BWC footage reflected that police, apart from the initial flashlight shining in his face, did not attempt to communicate with or rouse defendant until after the gun was retrieved. The prosecutor at oral argument acknowledged that police "did not initially ask if [defendant] was ok," but argued that the intention of shining the flashlight in defendant's face was to "see what condition the defendant is in."

Defendant emphasized that the officer with the BWC breached the car's front window to view the gun on the floor by sticking his hand through the open window to shine the flashlight in the back seat, a finding explicitly adopted by the court. He additionally underscored the fact that, on the BWC footage, there was apparently "no urgency" from the police to check on defendant's well-being prior to searching the car, undercutting the State's community caretaking argument.

Both parties asserted that there was no factual dispute and consented to the judge making a decision without an evidentiary hearing and testimony. The

A-2837-25

State did not make other arguments to justify the warrantless search apart from the "plain view" and "community caretaking" exceptions.

On February 12, 2026, the Honorable Lori E. Grifa, J.S.C. granted defendant's motion to suppress in a written decision. Regarding the State's plain view argument, the judge determined that the handgun, although it "undoubtably gave the police cause for further inquiry," was not immediately recognizable as "evidence of a crime." She further noted that cars are a space "where the occupant has a legitimate expectation of privacy" and concluded that this expectation was violated when the officer breached the front window with his flashlight while conducting an investigatory search.

Although the judge observed that the State did not argue this case presented exigent circumstances,[4] she concluded that the circumstances here were not exigent. The judge noted that from defendant's "supine position" he had "no immediate access to the gun, located on the floor behind the driver's seat." She also observed that "police were closer to the gun and were clearly positioned to thwart any efforts to reach for it."

With regard to the State's community caretaking argument, the judge

---

[4] The prosecutor at the motion argument did argue that an unsecured gun potentially created a dangerous situation for both defendant and the police officers.

found that police "expressed absolutely no interest or concern for the [defendant]" and, in fact, allowed him to continue lying in the car -- with his knee against the horn creating a nuisance -- while they prioritized seizing the gun. The judge noted "[t]here is no doubt the police could have used their observations to immediately remove the man from the car. Then, they could have turned their attention to the gun."

On this interlocutory appeal, the State argues the handgun should not have been suppressed for the following reasons:

<u>POINT I</u>

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING DEFENDANT'S MOTION TO SUPPRESS.

A. THE HANDGUN WAS SEIZABLE UNDER THE PLAIN VIEW DOCTRINE.

B. THE COMMUNITY CARETAKING DOCTRINE JUSTIFIED THE SEARCH.

For substantially the same reasons as discussed in the motion judge's detailed written opinion, we affirm the suppression of the handgun, although we add the following commentary.

II.

A trial judge's decision to suppress evidence is reviewed for an abuse of

7

discretion.  State v. Amang, 481 N.J. Super. 355, 374 (App. Div. 2025) (quoting State v. Nyema, 249 N.J. 509, 526 (2022)).  In general, appellate courts must "uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'"  Nyema, 249 N.J. at 526 (quoting State v. Ahmad, 246 N.J. 592, 609 (2021)).  "[F]indings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'"  State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).  Although factual findings are reviewed deferentially, the trial court's application of the law and "consequences that flow from established facts" are subject to de novo review. State v. Hubbard, 222 N.J. 249, 263 (2015).

Both the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect people from unreasonable searches and seizures by requiring warrants issued upon probable cause. Nyema, 249 N.J. at 527.  "Searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and invalid."  State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting Elders, 192 N.J. at 246).  To overcome this presumption, "the State must show by a preponderance of the evidence that the search falls within one of the well-recognized exceptions to

the warrant requirement." State v. Smart, 253 N.J. 156, 165 (2023) (citing State v. Manning, 240 N.J. 308, 329 (2020)).

A. Plain View

The State first argues in its brief the "plain view" exception applies to this case. The plain view doctrine recognizes that a police officer "need not 'close his eyes to suspicious evidence in plain view.'" State v. Reninger, 430 N.J. Super. 517, 535 (App. Div. 2013) (quoting State v. Bruzzese, 94 N.J. 210, 237 (1983)). The exception authorizes officers to seize contraband they can plainly see, or otherwise sense, so long as the following two prongs are met: (1) "the officer must lawfully be in the area where he observed and seized the incriminating item or contraband"; and (2) "it must be immediately apparent that the seized item is evidence of a crime." State v. Gonzales, 227 N.J. 77, 101 (2016) (emphasis added). For it to be "immediately apparent" that an object is evidence of a crime, "a police officer must have 'probable cause to associate the [item] with criminal activity,'" and that probable cause is determined by looking to "'what the police officer reasonably knew at the time of the seizure.'" Reninger, 430 N.J. Super. at 536 (quoting Bruzzese, 94 N.J. at 237).

We need not consider whether an unsecured firearm located on the floor of a car is immediately recognizable as contraband because the State has not

9

demonstrated that the firearm was viewed from a lawful area. At the trial level, defendant principally relied on State v. Mandel, 455 N.J. Super. 109, 112 (App. Div. 2018), to demonstrate that police here had not viewed the gun from a lawful area.

In Mandel, a police officer leaned his head into the open driver's side window during a traffic stop to hear the driver over the sound of traffic, after placing his head inside the vehicle, he smelled marijuana and subsequently searched the car and discovered contraband.[5] Ibid. The defendant in that case argued that, but for physically intruding the interior of the car, the officer would not have been in a position to smell the marijuana. Id. at 115. Although we determined that this minimal physical intrusion into the vehicle constituted a search, we found that the plain view, or "plain smell," exception still applied because the purpose of the intrusion (i.e., hearing the driver over busy traffic) was reasonable, and non-investigatory. Id. at 116.

The same justifications are not present in this appeal. It is undisputed that the BWC officer only spotted the handgun, beneath the driver's seat, after he put

---

[5] After the enactment of the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA"), the Supreme Court has acknowledged that the smell of marijuana alone no longer constitutes probable cause of criminal activity. State v. Cohen, 254 N.J. 308, 328 (2023). However, CREAMMA was not enacted when Mandel was decided.

his hand, holding his flashlight, through the car's window in order to get a better view of the rear passenger compartment. Additionally, neither party contends that the gun was otherwise visible from the car's exterior.

The State characterized the purpose of this intrusion, however brief, as a "survey" of defendant's car to see if there was anything within that might pose a risk to defendant and the officers. Although we are appreciative of officer safety concerns, the purpose here, unlike in Mandel, was manifestly investigative. At the time the officer examined the rear passenger compartment of the car, there had been no communication with defendant that established probable cause that there was a weapon or some other potentially dangerous contraband in the car's rear compartment. Because the police officer only saw the firearm after he physically breached the car to conduct an investigation, he did not demonstrably view the handgun from a lawful viewing area. Nor did the officer, as the exception requires, seize it from a lawful area. Gonzales, 227 N.J. at 101. Prong one of the plain view exception was not met.

At oral argument on appeal, defendant called our attention to Collins v. Virginia, 584 U.S. 586, 596 (2018), and State v. Ingram, 474 N.J. Super. 522, 538-39 (App. Div. 2023) for the principle that even if an officer is within the lawful viewing area, if the officer does not have a right of access to the visible

11

contraband, he cannot enter a constitutionally protected area without a warrant to seize it. Both of these cases dealt with incriminating items visible in plain view from a lawful area but confined within the curtilage of a private residence. We recognize that a vehicle is not subject to the same stringent constitutional protections as a private residence. See State v. Witt, 223 N.J. 409, 450 (2015). However, a vehicle is still a private space, and the officer required justification for his entrance into the space that allowed him to see the handgun. See State v. Keaton, 222 N.J. 438, 450 (2015) (suppressing evidence seen in plain view after an officer entered the defendant's overturned car to retrieve registration information).

With regard to the State's suggestion that exigent circumstances justified the intrusion, we agree with the motion judge's factual findings. The gun was not within defendant's reach, police outnumbered him, and he was unconscious and unresponsive.

B. Community Caretaking

The State alternatively argues that the search of defendant's car was justified under the community caretaking doctrine as, it asserts, the primary objective of police was to aid an unresponsive individual who was potentially in need of medical intervention.

"Courts have allowed certain warrantless searches under the Fourth Amendment when police officers have acted not in their law enforcement or criminal investigatory role, but rather in a community caretaking function." State v. Bogan, 200 N.J. 61, 73 (2009) (finding police had lawfully entered an apartment without a warrant when they were trying to assist an unsupervised young boy and inadvertently found a suspected child molester). Local police "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation or acquisition of evidence relating to the violation of a criminal statute." Id. at 73-74 (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). These functions include "protecting the vulnerable from harm and preserving property." State v. Edmonds, 211 N.J. 117, 141 (2012).

In situations where the community caretaker doctrine applies, the actions of police are reviewed with "a standard of reasonableness" and the police do not need to establish probable cause or reasonable suspicion. State v. Diloreto, 180 N.J. 264, 276 (2004).

As recognized by both counsel at oral argument, the police's investigatory and caretaking functions contribute to overall public safety. Therefore, police action is not automatically encompassed within the community caretaking

exception merely because it is undertaken for the purpose of ensuring public safety.

The State argues that the primary purpose of police approaching defendant in this case was to ensure his well-being, particularly because he was completely unresponsive. The State asserts that the gun needed to be secured to ensure the safety of both the police and defendant, who may have potentially awoken in a panicked or aggressive condition. The State draws particular attention to the fact that, after seizing the gun, the police turned their attention to rousing defendant only moments later.

Although we do not question that the police had public safety[6] concerns, the motion judge soundly concluded that the BWC footage does not support the State's characterization of this interaction as being primarily concerned with defendant's medical well-being. On arriving at the scene, officers did not attempt to communicate with or rouse defendant prior to investigating the back seat of the car other than to shine a flashlight in his face. The police did not attempt to physically examine defendant or check for a pulse until after the gun was retrieved. Police also did not communicate with defendant about his

---

[6] Defendant does not contest that applicable firearms regulations do not allow an unsecured handgun to be on the floor of a car's interior while the engine is running. N.J.S.A. 2C:58-4.6(b)(1)

A-2837-25

physical and mental condition until he was informed that he was under arrest, handcuffed, and secured in the back of a police vehicle.

Although without a testimonial hearing, one cannot know for certain exactly what the police knew about the situation before they arrived, the totality of the circumstances suggest that they attributed defendant's condition to intoxication and initially investigated the car to confirm this suspicion. While deterring drunk driving certainly contributes to overall public safety, that concern is not sufficiently related to ensuring this particular defendant's well-being and is more closely related to the police's investigative functions. We therefore concur with the trial judge's characterization of these facts, and the ultimate conclusion that the community caretaking doctrine does not apply here.

### III.

Because neither of the two exceptions to the warrant requirement invoked by the state are availing, we affirm the trial court's grant of defendant's motion to suppress the handgun.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

15

A-2837-25